308 So.2d 189 (1974)
McCulley FORD, INC., a Florida Corporation, Petitioner,
v.
John D. CALVIN, Director of the Division of Motor Vehicles of the Department of Highway Safety and Motor Vehicles of the State of Florida, Respondent.
No. U-452.
District Court of Appeal of Florida, First District.
December 31, 1974.
Rehearing Denied March 6, 1975.
*190 Ronald Sales, Sales & Christiansen, Palm Beach, and Joseph P. Metzger, Walton, Lantaff, Schroeder, Carson & Wahl, West Palm Beach, for petitioner.
John D. Calvin, and Charles Knott, Tallahassee, for respondent.
John B. Kent, Fred H. Kent, Kent, Sears, Durden & Kent, William R. Frazier, Jacksonville, and David R. Larrouy, Dearborn, for amicus curiae.
BOYER, Judge.
Bev Smith Ford, Inc. ("Smith") filed an application, pursuant to F.S. 320.27, for a license to engage in business as a Ford franchised motor vehicle dealer in Lake Park, Palm Beach County, Florida on March 23, 1973. Two of the three existing Ford dealers in the territory, Wayne Akers Ford, Inc. and Earl Wallace Ford, Inc., did not protest Smith's application. McCulley Ford, Inc. ("McCulley"), Petitioner here, the third existing Ford dealer, filed a written objection. John D. Calvin, Director of the Division of Motor Vehicles of the Department of Highway Safety and Motor Vehicles of the State of Florida, Respondent here, entered an order on July 13, 1973 setting Smith's application for hearing at his offices in Tallahassee at 10:00 a.m. on July 25, 1973. That hearing was subsequently postponed by oral agreement of the parties. Respondent then entered an order on July 20, 1973 setting Smith's application for hearing at his offices in Tallahassee at 10:00 a.m. on August 16, 1973. The hearing was completed on September 7, 1973.
The evidence presented related primarily to one basic issue: Were Ford's licensed franchised motor vehicle dealers providing adequate representation in the subject community or territory? (See F.S. 320.642). The burden of proof in showing inadequate representation is placed by F.S. 320.642 on the "licensee".
Ford adduced evidence seeking to prove that its licensed franchised dealers in the community were not providing adequate service for Ford vehicles or sale of Ford parts. McCulley's witnesses testified that the closest Ford dealer, McCulley, was located approximately 7.1 miles south of the location of the proposed additional dealer and that the next closest dealer, Wayne Akers Ford, Inc., was another 6.2 miles farther south. McCulley conceded in testimony presented by it that its facilities were inadequate but urged that upon moving into its proposed new facility it would more than adequately represent Ford in its area of responsibility.
*191 On November 29, 1973, Respondent entered an order, which provided in material part as follows:
"* * * the Director finds from the facts presented that while the presently licensed franchised dealers have complied with licensee's agreements they are not providing adequate representation in the community or territory for such licensee, and that it would be unreasonable and arbitrary to deny a license to the applicant.
"Therefore, under the circumstances it would appear just to grant the applicant a license to act as a Ford franchised dealer.
"It is accordingly
"ORDERED that the license applied for shall be issued upon compliance by the applicant with all requirements as provided in Section 320.27, Florida Statutes."
Motion for rehearing was filed by Petitioner which was denied by Respondent's order dated December 17, 1973. Petition for Writ of Certiorari was thereupon (on December 26, 1973) filed in this Court.
Several points are raised for our consideration. We will consider the most vexing one first. It may be succinctly stated thusly: Was the procedure to be followed in considering the application for license by Smith governed by Chapter 70-424, Laws of Florida, enacted by the 1970 session of the Legislature, or by F.S. 320.642 as printed in the 1971 compilation of the Florida Statutes? Framed another way, was the Respondent (Director) authorized to hold hearings and pass upon the application for the license or was such the prerogative of the Department?
Respondent is the Director of the Division of Motor Vehicles. The Division of Motor Vehicles is a division of the Department of Highway Safety and Motor Vehicles. The "head" of the Department is the Governor and the Cabinet. (F.S. 20.24)
The heads of the various departments of government are granted powers and duties by F.S. 20.05. One of those powers is to employ an "executive director". (F.S. 20.05(7).
It is apparent from a reading of the above mentioned statutes (and others) that the designations "Director" and "Department" are not synonymous.
F.S. 320.642, Florida Statutes 1971, provides as follows:
"The department shall deny an application for a motor vehicle dealer license in any community or territory where the licensee's presently licensed franchised motor vehicle dealer or dealers have complied with licensee's agreements and are providing adequate representation in the community or territory for such licensee. The burden of proof in showing inadequate representation shall be on the licensee." (Emphasis added)
F.S. 320.665, Florida Statutes 1971, provides as follows:
"(1) In the event the department shall conduct any hearing pursuant to the provisions of §§ 320.60-320.70, the hearing shall be conducted pursuant to chapter 120, the administrative procedure act, and the department shall have the power to conduct hearings pursuant to that act. The department shall have the further power in hearings arising under §§ 320.60-320.70 to:
"(a) Determine the place in the state where they shall be held;
"(b) Issue subpoenas for the attendance of witnesses and for the production of documentary evidence;
"(c) Take depositions of witnesses residing within or without the state, in the manner provided for in civil actions in circuit courts of this state; and
"(d) Pay such witnesses such fees and mileage for their attendance as is *192 provided for witnesses in civil actions in circuit courts of this state.
"(2) Whenever such a hearing is held by the department or a hearing examiner, the same shall be recorded; and when a hearing is held by a hearing examiner, he shall report his findings in writing to the department which shall thereupon make its rulings and orders. Any information obtained from a hearing may not be used against such licensee as the basis for a criminal prosecution under the laws of this state." (Emphasis added)
F.S. 320.60(7), Florida Statutes 1971, defines "Department" to mean "the department of highway safety and motor vehicles".
It is agreed by all parties to this proceeding that no action at all has been taken relative to the license, the granting of which is here challenged, by the "Department"; but rather that all hearings have been conducted by, and all other relevant action taken by, the Respondent "Director".
Petitioner therefore contends that since the "Department", as referred to in the hereinabove quoted statutes, has not acted, the challenged license could not have been validly issued by Respondent. Respondent urges that the above mentioned statutes do not govern and that the applicable law may be found in Chap. 70-424, Laws of Florida (hereinafter referred to as Chapter 70-424).
F.S. 320.642 and part of F.S. 320.27 and F.S. 320.60, Florida Statutes 1971, were enacted into law as part of Chap. 70-424, by the 1970 session of the Florida Legislature. Section 1(1), and the material parts of Section 4 and Section 9 of that Session Law read as follows:
Section 1:
"(1) Definitions.  The following words, terms and phrases when used in this section shall have the meanings respectively ascribed to them in this subsection, except where the context clearly indicates a different meaning: "(a) `Director' means the director of the (department) division of motor vehicles." (Parenthesis and emphasis are part of the statute)
* * * * * *
Section 4:
"320.60. Definitions for 320.61-320.70.  Whenever used in 320.61-320.70, unless the context otherwise requires, the following words and terms have the following meaning:
* * * * * *
"(7) `Director' means the director of the [department] division of motor vehicles, sometimes referred to under this law as the `licensor'."
* * * * * *
Section 9:
"(9) The director shall deny an application for a motor vehicle dealer license in any community or territory where the licensee's presently licensed franchised motor vehicle dealer or dealers have complied with licensee's agreements and are providing adequate representation in the community or territory for such licensee. The burden of proof in showing inadequate representation shall be on the licensee."
The Legislature, in adopting Florida Statutes, 1971, enacted into law F.S. 11.2422, which provides that:
"Every statute of a general and permanent nature enacted by the state or by the territory of Florida at or prior to the regular 1969 legislative session, and every part of such statute, not included in Florida Statutes, 1971, as adopted by § 11.2421, as amended, or recognized and continued in force by reference therein or in §§ 11.2423 and 11.2424, as amended, is repealed."
But, it did not repeal any laws enacted at the 1970 regular and special sessions of the Legislature, including Chap. 70-424. F.S. *193 11.2424, Florida Statutes 1971, specifically provides that:
"Laws enacted at the 1970 regular and special sessions of the legislature and laws enacted at the 1971 regular and special sessions of the legislature are not repealed by the adoption and enactment of the Florida Statutes, 1971, by § 11.2421, as amended, but shall have full effect as if enacted after its said adoption and enactment." (Emphasis added)
Thus, Chap. 70-424, portions of which are quoted above, remained the law at least until the effective date of F.S. 11.2421 and F.S. 11.2422, Florida Statutes 1973. (Florida Statutes 1973, was not published until after the Petition for Writ of Certiorari was filed sub judice. We do not now express any opinion as to whether the holdings here announced would be applicable to licensing procedures after the effective date of Florida Statutes 1973, as provided in F.S. 11.2421, Florida Statutes 1973.)
The statutory revision services, apparently relying upon Chapter 70-439, Laws of Florida, as authority, made substantial and material changes in Chap. 70-424. As a result F.S. 320.27(1)(a) Florida Statutes 1971, was made to read:
"(1) Definitions.  The following words, terms and phrases when used in this section shall have the meanings respectively ascribed to them in this subsection, except where the context clearly indicates a different meaning:
"(a) `Department' means the department of highway safety and motor vehicles." (Emphasis added)
F.S. 320.60(7), Florida Statutes 1971, was made to read:
"(7) `Department' means the department of highway safety and motor vehicles."
F.S. 320.642 and F.S. 320.665, Florida Statutes 1971, were made to read as they are quoted in an earlier part of this opinion.
Chapter 70-439, above mentioned was a "revisor's bill" and provided as follows:
"In preparing manuscript for the printing of the Florida Statutes or any supplement thereto, the statutory revision service of the legislative service bureau shall, in the absence of specific provision to the contrary, conform the terminology of all acts passed by the 1970 or subsequent sessions to the terminology of the 1969 Reorganization Act, chapter 69-106, Laws of Florida, as amended."
The revision of Chap. 70-424 by the statutory revision service effects a substantial substantive change in that chapter because it purportedly took the licensing power from the Director of the Division of Motor Vehicles and gave it to the "department". This clearly was not intended by the Legislature, as evidenced by its language in Chap. 70-424, Section 1, Paragraph 1(a) and Section 4, Paragraph 7.
The intent of the Legislature in enacting Chap. 70-424, 1970, is unmistakable. It was acutely aware of the enactment in the preceding year of the commonly called Governmental Reorganization Act of 1969, and that that act contained Section 24(2) which created a Department of Highway Safety and Motor Vehicles. The title of Chap. 70-424, proves that that was true: It states specifically that it affects "the division of motor vehicles of the department of highway safety and motor vehicles."
The statutory revision service redrafted Chapter 70-424 arbitrarily and contrary to the law as stated by our Supreme Court in Jones v. Christina, Sup.Ct. Fla. 1966, 184 So.2d 181 and Foley v. State, Sup.Ct.Fla. 1951, 50 So.2d 179. It did so by substituting the word "department" whenever the Legislature had used the word "director". It even went to the extent of redefining the clear intent of the Legislature by rewriting Section 1, Paragraph 1(a) and Section 4, Paragraph 7 of Chap. 70-424. That action the statutory revision service had no authority to take.
*194 The Supreme Court of Florida in Jones v. Christina, supra, stated two basic points which limit statutory revisioners' powers:
"The statutory revision power given to the attorney general was intended only for the purification of the statutory law; and not to make changes in the substantive law without express legislative action. The revisor's notes which must, by statute, accompany his bills, give his reason for each recommended change and are an integral part of a revisor's bill and must be considered in any interpretation of it. * * *" (184 So.2d at page 184)
The service has made substantive changes and failed to give reasons for making such changes.
The Supreme Court again, in Foley v. State, supra, said:
"In order for the statutory law to be amended it is necessary that the law as amended be enacted by the legislature, either by expressly enacting the Cumulative Supplement in which it is contained in toto or by a separate specific enactment of the amendment itself. * * *" (50 So.2d at page 183)
It also said:
"* * * It is also obvious that only those repeals, amendments, corrections and additions made by the General Laws of the 1943 and 1945 sessions of the legislature were adopted and enacted by Section 1 of Chapter 24337, Laws of Florida, 1947  not those which may have been made by the Attorney General or under his supervision and which were not brought to the attention of the legislature by revisor's bills and as such enacted into law." (Emphasis added; 50 So.2d at page 183)
In language applicable to the change made by the revisor here, the Court said:
"* * * If the languge employed by the legislature in the law itself is clear and unambiguous the legislative intent is to be found therein." * * *
"There is no occasion in the instant case to seek an intent other than that which is found in the clear, unambiguous wording of Section 1 of Chapter 24337, supra. The intent found in the language of Section 1 does not lead to absurdity, nor does it suggest evil consequences; indeed, it reflects a studied caution and is salutary in its end effect. The terminology employed by the legislature in Section 1 of Chapter 24337, supra, may be presumed to have been designedly chosen for the very purpose of avoiding the possibility of inadvertently enacting a change, correction, amendment or repeal which might have been made by the revisor under a misapprehension of his authority. Moreover, our conclusion is in line with the procedure which traditionally has been followed by the legislature in providing that repeals, amendments, changes and corrections be made by revisor's bills `duly enacted.' * * *" (50 So.2d at page 184)
The preface to the printed publication of the 1971 Florida Statutes contains the following statement on page vii:
"* * * The portions consisting of legislative enactments of sessions occurring subsequent to publication of the preceding regular edition of the Statutes (including sections published in the intervening even-year Supplement) are made prima facie evidence of the law in all courts of the state. See § 11.242(6)(d). During the period a provision is characterized as prima facie evidence of the law, the enrolled act stands as the official, primary evidence of the law as enacted." (Emphasis added)
Section 11.242(6)(d), Florida Statutes 1971, states that:
"(6) In carrying on the work of the statutory revision service and in preparing the Florida Statutes for publication:
"(d) All laws of a general and permanent nature which are of general application throughout the state enacted by any current session of the legislature *195 shall be compiled and included, assigning thereto in all appropriate places such chapter and section identification, by the decimal system of numbering heretofore embodied in the Florida Statutes, as is appropriate and proper, but all chapters and sections so compiled shall be indicated with a history note, clearly showing that said section or chapter was not a part of the revision at the time or its adoption and giving the proper legislative session law chapter and section number. The matter included under the authority of this subsection shall be incorporated as enacted in any current session and shall be prima facie evidence of such law in all courts of the state." (Emphasis added)
The administrative responsibility imposed on the "department" by Section 320.642, Florida Statutes 1971, therefore was ineffective, because the enrolled act, Chap. 70-424 of the 1970 Session Laws, stands as the official primary evidence of the law as enacted, and it imposed that administrative responsibility on the "director of the division of motor vehicles" not on the department.
Chapter 73-70, Laws of Florida 1973, does contain statutory provisions which state that all 1970 Session Laws not included in Florida Statutes 1973, will be repealed effective on the publication of the 1973 Florida Statutes (Sec. 11.2422). However, since Florida Statutes 1973 were not published prior to jurisdiction vesting in this Court, and were not in effect at the time of the actions giving rise to this controversy, we have no occasion to here consider their effect.
Section 320.642, Florida Statutes, as printed in the 1971 Florida Statutes, therefore, is no more than prima facie evidence of the law then in effect. The enrolled act, Chap. 70-424, enacted by the Florida Legislature in 1970 stood as the official primary evidence of the law as enacted. It rebuts the prima facie effect of Section 320.642, Florida Statutes 1971.
Having determined that the Director, Respondent here, was properly authorized to hold hearings and pass upon the application for the license the issuance of which is here challenged, we now turn to consideration of Petitioner's contention that the order entered by Respondent did not contain findings of fact and is therefore invalid.
Respondent urges that the order reviewed by this Court in Plantation Datsun, Inc. v. Calvin, Fla.App. 1st 1973, 275 So.2d 26, contained essentially the same verbiage as the order considered sub judice and that therefore Plantation Datsun, Inc. v. Calvin, supra, is controlling. However, a review of that case reveals that we there only considered constitutional issues and sufficiency of the evidence to support the Respondent's denial of an application for a license. In Plantation petitioner made no special point of the lack of factual findings in the Director's order, though we find from a re-examination of that case that it was mentioned in one sentence of the petitioner's brief. That case, therefore, has no application to the point now under consideration here.
Implicit in Florida Statute 320.642 is the requirement that the Director's order be based upon an appropriate factual basis. The Administrative Procedure Act, Chapter 120, Florida Statutes, particularly F.S. 120.26(3), which act is specifically made applicable by Florida Statute 320.665(1), also clearly contemplates that "the hearing examiner, member of the agency, or the agency" enter "findings and conclusions".
In Powell v. Board of Public Instruction of Levy Co., Fla.App. 1st 1969, 229 So.2d 308, this Court said:
"It has been held that a final order of a county school board terminating a teacher's contract of employment which is couched in such general language as to amount to nothing more than a `verdict of guilty as charged' is insufficient. Due process as well as the requirements of the Administrative Procedure Act dictates *196 that the agency's final action be reduced to writing, contain findings of facts based upon the evidence adduced at the hearing, and specifically state the charges which the agency finds to have been sustained. Such was the conclusion reached by the Supreme Court in Hickey v. Wells, Fla. 1957, 91 So.2d 206, 210. The reason for such rule was stated by the Supreme Court in Hickey to be as follows:
`"`The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administration functions, assuring more careful administrative consideration, helping parties plan their cases for rehearing and judicial review, and keeping agencies within their jurisdiction.' (Emphasis supplied.)"'" (229 So.2d at pages 311, 312) (Emphasis added)
We again said, in Deel Motors, Inc. v. Department of Commerce, Fla.App. 1st 1971, 252 So.2d 389 that:
"Part II of the Administrative Procedure Act clearly directs that all proceedings conducted by any state agency, board, commission, or department for the purpose of adjudicating any party's legal rights, duties, privileges, or immunities, must be conducted in a quasi-judicial manner in which the basic requirements of due process are accorded and preserved. Such proceeding contemplates that the party to be affected by the outcome of the proceeding will be given reasonable notice of the hearing and an opportunity to appear in person or by attorney and to be heard on the issues presented for determination. It is contemplated that the order to be entered will be based on competent and substantial evidence adduced by the parties consisting of sworn testimony of witnesses and properly authenticated documents bearing the required indicia of credibility. The parties must be accorded the right to confront and cross-examine the witnesses against them, and be reasonably heard on the contentions urged by them with respect to the action to be taken by the agency. Although technical and formal rules of procedure which govern trials before courts of law are not applicable to administrative proceedings, the pleadings must be such as to reasonably inform the affected party of the nature and purpose of the hearing to be held and the relief sought by the initiating party. Probative effect must be given to such evidence as would be admissible in civil proceedings in the courts of this state. The final order entered in such proceedings must include the findings of fact on which the conclusions reached are based." (Emphasis added; 252 So.2d at page 394)
Chief Judge Rawls of this Court, considering a case wherein the director of the Division of Beverage had elected to use a hearing examiner, citing Powell v. Board of Public Instruction of Levy Co., supra, held that the "findings of fact and recommendation" there rendered by the examiner was "far short of `findings of fact' contemplated by the statutory provision." In that case the Court quashed the action of the respondent-director and remanded with directions that an appropriate final order be entered containing specific findings of fact based upon the evidence adduced at the hearing. We find the same to be appropriate here.
We have considered the other points raised by Petitioner and find them to be without merit. (See DeGroot v. Sheffield, Sup.Ct.Fla. 1957, 95 So.2d 912; Board of Regents v. Budjan, Fla.App. 1st 1971, 242 So.2d 163; Bevis v. State Board of Funeral Directors and Embalmers, Fla.App. 1st 1973, 279 So.2d 339; Plantation Datsun, Inc. v. Calvin, supra; Deel Motors, Inc. v. Department of Commerce, supra; Hickey v. Wells, supra and Schwartz, American Administrative Law, page 75)
*197 In Hess Marine, Inc. v. Calvin, Fla.App. 1st 1974, 296 So.2d 114, in which the adequacy of the director's findings was not made an issue for our review, we held that inasmuch as the director had found from the evidence presented to him that the existing licensee was furnishing adequate service in its locality, such finding precluded, by virtue of the mandatory language contained in F.S. 320.642, the entry of an order granting a new license. We therefore granted certiorari, quashed the respondent's order and directed rescission of the license, the issuance of which was there at issue. We have no such circumstances here. Sub judice, the director found, though not based upon sufficient recitation of findings of fact, that "the presently licensed franchised dealers have complied with licensee's agreements" and that "they are not providing adequate representation in the community or territory for such licensee". Therefore, there is no way for us to know, by judicial review, (see Hickey v. Wells, supra) whether such conclusions set forth in the director's order have sufficient foundation in findings of fact, the prerogative of which it is his to make based on the evidence adduced before him.
Accordingly, certiorari is granted. However, for the reasons above stated we do not here direct rescission as we did in Hess Marine, Inc. v. Calvin, supra, (for the reasons hereinabove stated) but we remand with directions that an appropriate final order be entered which shall contain specific findings of fact based upon the evidence adduced at the hearing before Respondent. Should such not be accomplished forthwith then this Court will, upon appropriate petition, reconsider its failure to here and now direct rescission of the challenged license.
It is so ordered.
RAWLS, C.J., and McCORD, J., concur.