358 So.2d 1333 (1978)
Arrie Lee SHUMAN, Neil Barnes, Deleon Scott, Jack Pierce, and Allan Hawkins, Petitioners,
v.
STATE of Florida, Respondent.
No. 50675.
Supreme Court of Florida.
February 23, 1978.
As Corrected May 25, 1978.
*1334 Louis G. Carres, Asst. Public Defender, Tallahassee, for petitioners.
Robert L. Shevin, Atty. Gen. and Susan E. Mole, Asst. Atty. Gen., Tallahassee, for respondent.
SUNDBERG, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the District Court of Appeal, First District, reported at 339 So.2d 1176. The issue presented is whether costs for preparation of a transcript necessary for an indigent's appeal from a hearing officer's order of continued involuntary hospitalization, entered pursuant to Chapter 394, the Baker Act, should be taxed against the county in which the hearing was held or against the office of the public defender appointed to represent such indigent. The district court's decision affects a class of constitutional or state officers and, therefore, we have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution.
Petitioners were involuntarily committed to the Florida State Mental Hospital pursuant to the provisions of Chapter 394, Florida Statutes (1975), the Baker Act. When the hospital desired to continue petitioners' involuntary hospitalization beyond the initial six-month commitment authorized by Section 394.467(3), Florida Statutes (1975), each petitioner was granted a hearing before a hearing officer for the Department of Administration, as provided by Section 394.467(4)(a), Florida Statutes (1975). Petitioners were adjudged insolvent and, as provided by Section 394.467(4)(e), were represented by the public defender at their respective hearings. An order of commitment for continued involuntary hospitalization was entered as to each petitioner. Pursuant to the public defender's request, the hearing officer ordered a court reporter to transcribe the testimony taken at the hearings.
As provided by Section 394.457(6)(d), Florida Statutes (1975), appeals were taken to the Circuit Court for Gadsden County, Florida, raising the issue of the sufficiency of the evidence to warrant continued hospitalization. After the court reporter had transcribed the testimony taken at the *1335 hearings but before the appeals were heard, however, each petitioner was either released from Florida State Hospital or transferred to a voluntary status. Thereafter, petitioners voluntarily dismissed their appeals pursuant to Florida Appellate Rule 3.13b. The court reporter submitted a bill to the public defender's office, and petitioners filed motions to tax the costs of the transcripts against Gadsden County, the county in which petitioners were hospitalized and in which the appeals were filed. The circuit court refused to tax the costs against the county due to its inability to find authority in Chapter 394 to support such an order. The circuit court consolidated petitioners' cases for further appellate review. On appeal, the District Court of Appeal, First District, found no reversible error and, consequently, affirmed the circuit court's denial of petitioners' motion to tax costs. It is from that affirmance that petitioners have requested this Court to exercise its discretionary review.
Petitioners submit that as the right to appeal from an order requiring continued involuntary hospitalization is provided by law to all, this right cannot constitutionally be denied to those unable to pay the cost of the transcript necessary for review. To hold otherwise, it is maintained, would deny indigents equal access to the courts, due process and equal protection of the law, in violation of the Florida and the Federal Constitution. For the reasons hereinafter expressed, we accept petitioners' contention.
The deprivation of liberty which results from confinement under a state's involuntary commitment law has been termed a "massive curtailment of liberty." Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Those whom the state seeks to involuntarily commit to a mental institution are entitled to the protection of our Constitutions, as are those incarcerated in our correctional institutions. Chief Justice Warren Burger elaborated upon this principle, concurring in O'Conner v. Donaldson, 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975):
There can be no doubt that involuntary commitment to a mental hospital, like involuntary confinement of an individual for any reason, is a deprivation of liberty which the State cannot accomplish without due process of law. Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 1211, 18 L.Ed.2d 326 (1967). Cf. In re Gault, 387 U.S. 1, 12-13, 87 S.Ct. 1428, 1435-1436, 18 L.Ed.2d 527 (1967). Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding.
A transcript of the hearing provided by Section 394.467(4)(a), Florida Statutes (1975), upon which an order requiring continued involuntary hospitalization is based, is necessary for meaningful appellate review. The indigent petitioners in the case sub judice have a right to an appellate record of these commitment proceedings, provided at public expense, under both the Florida and the Federal Constitution for the reason succinctly stated in Williams v. Oklahoma City, 395 U.S. 458, 459-460, 89 S.Ct. 1818, 1819, 23 L.Ed.2d 440 (1969):
"This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899." Rinaldi v. Yeager, 384 U.S. 305, 310-311, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). Although the Oklahoma statutes expressly provide that "[a]n appeal to the Court of Criminal Appeals may be taken by the defendant, as a matter of right from any judgment against him ...," the decision of the Court of Criminal Appeals wholly denies any right of appeal to this impoverished petitioner, but grants that *1336 right only to appellants from like convictions able to pay for the preparation of a "case-made." This is an "unreasoned distinction" which the Fourteenth Amendment forbids the State to make. See Griffin v. Illinois [and] Draper v. Washington [supra]; Eskridge v. Washington State Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958). (Emphasis in original)
Accord, Grissom v. Dade County, 293 So.2d 59 (Fla. 1974); Bell v. State, 208 So.2d 474 (Fla. 1st DCA 1968).
Petitioners submit that the cost of the appellate transcripts in issue must be borne by the county in which the involuntary commitment proceedings were held. In support of this proposition they cite Florida Appellate Rule 6.8,[1] which provides that the cost of an indigent criminal defendant's transcript on appeal shall be assessed against the county in which the case arises. Respondent, on the other hand, argues that counties are specifically prohibited from paying for the transcripts in question, citing Section 27.54(2), Florida Statutes (1975), which provides:
No county or municipality shall appropriate or contribute funds to the operation of the offices of the various public defenders.
In addition, maintains respondent, legislative appropriations are provided for these expenses by Section 27.51(4)(e), Florida Statutes (1975).[2]
We do not agree with petitioners' proposition that Florida Appellate Rule 6.8 addresses indigents seeking appellate review under Section 394.457(6)(d), Florida Statutes (1975), of an order requiring continued involuntary hospitalization. Florida Appellate Rule 6.8 relates only to indigent criminal defendants. However, we conclude that, for the reason that Florida Appellate Rule 6.8 requires counties to pay the cost of appellate transcripts for criminal defendants, counties in which involuntary commitment proceedings are held must also bear the cost of an indigent's transcript when an appeal is taken pursuant to Section 394.457(6)(d). Once the State has chosen to establish an avenue of appellate review of orders requiring continued involuntary hospitalization, both our State and the Federal Constitution require that indigents be afforded review commensurate to that available to nonindigents. See Williams v. Oklahoma City, Grissom v. Dade County, and Bell v. State, supra.
Sections 27.54(2) and 27.51(4)(e), Florida Statutes (1975), do not alter our conclusion. It is an established rule of statutory construction that legislative intent should be ascertained from an examination of a statute as a whole, rather than any one part thereof. Florida Jai Alai, Inc. v. Lake Howell Water & Reclamation District, 274 So.2d 552 (Fla. 1973); State v. Hayles, 240 So.2d 1 (Fla. 1970); Englewood Water District v. Tate, 334 So.2d 626 (Fla. 2d DCA 1976). An examination of Section 27.54 in its entirety reflects that the enactment relates solely to operation expenses of the public defenders' offices, such as for employment of personnel and travel expenses. It is clear, therefore, that subsection (2) of the statute was intended only to prohibit counties from contributing to such operation expenses; it does not proscribe contributions for costs of appeals  those appellate *1337 expenditures which are not related to internal operation of the public defender's office. Costs have been defined to include payments to a court reporter for preparation of a record on appeal. See King v. Weis-Patterson Lumber Co., 127 Fla. 109, 172 So. 693 (1937); Markham v. Gottsegen, 181 So.2d 594 (Fla. 2d DCA 1966). Section 27.51(4)(e) simply complements Section 27.54(2) by providing for legislative appropriations for operation expenses of the enumerated public defenders' offices. Were respondent correct in its assertion concerning the operation of Section 27.54(2) counties would be precluded from paying the transcript costs of an indigent criminal defendant under Rule 6.8. The transcripts in question are no more operation expenses of the public defenders' offices than are transcripts in criminal appeals.
In order to ameliorate the fiscal burden upon counties in which state hospitals are situated, petitioners submit that Section 57.091, Florida Statutes (Supp. 1976),[3] provides for reimbursement by the State to counties which are required to pay for the appellate transcripts in issue. Respondent, however, argues that Section 57.091 provides for reimbursement to counties only for appellate costs of indigent state prisoners, not for persons involuntarily committed to mental institutions pursuant to Chapter 394. We concur with respondent's position.
A literal reading of Section 57.091 which provides, inter alia, for reimbursement of costs "paid by, any county in all competency proceedings, all criminal prosecutions against state prisoners ... and all habeas corpus cases ... of state prisoners" would seem to belie our construction of that enactment. (Emphasis supplied) Section 57.091 could reasonably be read to provide for reimbursement of costs to counties for any indigent's appeal in competency proceedings, and not solely for those of a state prisoner. However, the statutory revision division in revising the enrolled act, Section 3, Chapter 76-287, Laws of Florida,[4] which was subsequently published as Section 57.091, Florida Statutes (Supp. 1976), altered the clear intent of the legislature expressed in the enrolled act.
Section 3, Chapter 76-287, provides for reimbursement of costs of appeals "in all competency proceedings, all criminal prosecutions *1338 against state prisoners ..., and in all habeas corpus cases... of state prisoners... ." (Emphasis supplied) The statutory revision division's deletion of the conjunctive "and" between that part of Section 3, Chapter 76-287, relating to competency proceedings and that part relating to criminal prosecutions, and insertion of a comma between those phrases, caused the words "state prisoners" to modify only "criminal prosecutions"; "competency proceedings" was not so modified and, therefore, limited to those involving state prisoners.
The statutory revision division had no authority to effect such a substantive change in Section 3, Chapter 76-287. See Jones v. Christina, 184 So.2d 181 (Fla. 1966); Foley v. State, 50 So.2d 179 (Fla. 1951); McCulley Ford, Inc. v. Calvin, 308 So.2d 189 (Fla. 1st DCA 1974). In Jones v. Christina, supra, this Court enunciated the limitations upon the statutory reviser's powers:
The statutory revision power ... was intended only for the purification of the statutory law; and not to make changes in the substantive law without express legislative action. 184 So.2d at 184. (Footnotes omitted)
This principle was also elaborated upon in Foley v. State, supra:
In order for the statutory law to be amended it is necessary that the law as amended be enacted by the legislature, either by expressly enacting the Cumulative Supplement in which it is contained in toto or by a separate specific enactment of the amendment itself. 50 So.2d at 183.
In the case sub judice, the statutory revision division's substantive change in Section 3, Chapter 76-287, Laws of Florida, as embodied in Section 57.091, Florida Statutes (Supp. 1976), is without force or effect because Section 57.091 has not yet been adopted by the legislature. The statutory revision division's publication of the statutes of this State as revised and consolidated is adopted biennially by the legislature. By Chapter 77-266, Laws of Florida, the 1977 Legislature adopted the statutes of 1975, to be published under the title "Florida Statutes 1977." All laws enacted at or prior to the 1975 legislative session not contained in Florida Statutes 1977 were repealed. The legislature did not, however, repeal any laws enacted at the 1976 and 1977 sessions. This will occur only upon adoption by the 1979 Legislature of the laws enacted during the 1976 and 1977 sessions. Until that time, Section 57.091, Florida Statutes (Supp. 1976), the statutory revisions division's publication, constitutes only prima facie evidence of the law. The enrolled act, Section 3, Chapter 76-287, stands as the official, primary evidence of the law as enacted by the legislature. See Section 11.242(5)(c), Florida Statutes (1975); McCulley Ford, Inc. v. Calvin, supra.
We make no determination as to the effect of Section 57.091, Florida Statutes (Supp. 1976), should the 1979 Legislature adopt it as amended by the statutory revision division. This Court is merely effectuating the legislative intent as expressed in the enrolled act. Consequently, we hold that Section 3, Chapter 76-287, Laws of Florida, provides for reimbursement to counties solely for the enumerated costs incurred by prisoners incarcerated in state correctional institutions.
We recognize the inequity of requiring counties with mental institutions within their borders to bear the costs of indigents' transcripts for appeals from orders requiring continued involuntary hospitalization under the Baker Act, particularly since this burden has been recognized by the legislature with respect to state correctional institutions. However, it is not this Court's province to vary the clear legislative intent expressed in a statute merely because of our belief as to the lack of wisdom of the enactment. See McDonald v. Roland, 65 So.2d 12 (Fla. 1953); State ex rel. Bie v. Swope, 159 Fla. 18, 30 So.2d 748 (1947); Vocelle v. Knight Brothers Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960).
Accordingly, the writ of certiorari is granted and the decision of the District Court of Appeal, First District, is quashed, with instructions to remand to the circuit *1339 court for proceedings not inconsistent with this opinion.
It is so ordered.
ENGLAND, HATCHETT and KARL, JJ., concur.
ADKINS, Acting C.J., concurs in result only.
NOTES
[1] Fla.App. Rule 6.8 reads:

"When an appeal is taken by either the state or the defendant, the trial court shall, upon motion of either party, direct the reporter to transcribe his notes of the proceedings ... The cost of such stenographic report and copies shall be paid by the defendant if he takes the appeal and by the county if the state takes the appeal, except that if the state appeals under authority of Section 924.07(4). Florida Statutes, after the taking of an appeal by the defendant, the defendant shall pay the cost of that part which he procures to be prepared and the county shall pay for that part which the state procures to be prepared; provided that, if an appealing defendant is adjudged insolvent, the county shall pay the cost of such transcript and copies."
[2] § 27.51(4)(e), Fla. Stat. (1975), reads:

"A sum shall be appropriated annually to the public defender of those judicial circuits enumerated in paragraphs (a)-(d) for the employment of attorneys as part-time public defenders, clerical employees, and expenses, including those incurred in cases on appeal."
[3] § 57.091, Fla. Stat. (Supp. 1976), reads:

"Costs; refunded to counties in certain proceedings relating to state prisoners.  All lawful fees, costs, and expenses hereafter adjudged against, and paid by, any county in all competency proceedings, all criminal prosecutions against state prisoners imprisoned in a state correctional institution, and all habeas corpus cases brought to test the legality of the imprisonment of state prisoners of such correctional institutions shall be refunded to the county paying the sum from the General Revenue Fund in the state treasury in the manner and to the extent herein provided, to wit: between the 1st and 15th of the month next succeeding the month in which the fees, costs, and expenses have been allowed and paid by the county, the clerk of the court shall make requisition on the Comptroller for the fees, costs, and expenses so allowed and paid during the preceding month, giving the style of the cases in which fees, costs, and expenses were incurred and the amount and items of cost in each case; providing a certified copy of the judgment adjudging the fees, costs, and expenses against the county and showing that the amount represented thereby has been approved by the presiding judge, paid by the county, and verified by the clerk; and attaching a certified copy of the bill as approved and allowed by the board of county commissioners of the county. If the Comptroller finds the bills legal and adjudged against and paid by the county, he shall draw his warrant in the amount thereof, or in the amount he finds legal and adjudged against and paid by the county, in favor of the county paying the fees, costs, and expenses, which shall be paid by the State Treasurer from the General Revenue Funds of the state."
[4] § 3, Ch. 76-287, Laws of Florida, reads:

"Section 57.091, Florida Statutes, is amended to read:
"57.091 Costs; refunded to counties in certain proceedings relating to state prisoners.  All lawful fees, costs and expenses hereafter adjudged against, and paid by any county in all lunacy competency proceedings, and all criminal prosecutions against state prisoners imprisoned in a state correctional institution at the state prison farm at Raiford, and all habeas corpus cases brought to test the legality of the imprisonment of state prisoners of such correctional institutions imprisoned at the state prison farm at Raiford, shall be refunded to the county paying the sum from the general revenue fund in the state treasury in the manner and to the extent herein provided... ."