889 So.2d 882 (2005)
Daryl L. LAVENDER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-3452.
District Court of Appeal of Florida, Fifth District.
December 3, 2004.
Rehearing Denied January 6, 2005.
*884 Daryl L. Lavender, Pro Se.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, J.
After being convicted of lewd and lascivious acts upon a child and completing his prison sentence, Daryl L. Lavender was civilly committed as a sexually violent predator pursuant to the Jimmy Ryce Act ("the Ryce Act"), sections 394.910-.931, Florida Statutes (2003) (entitled "Involuntary Civil Commitment of Sexually Violent Predators"). Section 394.918(1), Florida Statutes (2003),[1] requires that the committed person undergo an examination of his mental condition at least once a year. The results of that examination are then provided to the circuit court that committed the person. Upon receipt of the report, the court is required to review the person's status and then hold a limited probable cause hearing described in section 394.918(3)[2] to determine if the person's "condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence of discharged." Id.
Lavender, who is self-represented and indigent, sought and obtained the appointment of an independent expert, Louis Legum, *885 Ph.D., in anticipation of the circuit court's annual review of his mental status. Lavender also sought authorization for Dr. Legum to perform two specific tests: a penile plethysmograph[3] and a polygraph. The trial court denied Lavender's request for these tests and this appeal followed.
The issue of the trial court's authority to authorize specific tests for an individual committed under the Ryce Act appears to be one of first impression in Florida. However, we recognize that "[c]ivil commitment proceedings involve a serious deprivation of liberty and, thus, such proceedings must comply with the due process clauses of the Florida and United States Constitutions." State v. Goode, 830 So.2d 817, 825-26 (Fla.2002). Even in civil commitment proceedings, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992).
In proceedings where the "individual interests at stake ... are both `particularly important' and `more substantial than mere loss of money,'" due process places a higher burden on the state. Pullen v. State, 802 So.2d 1113, 1117 (Fla.2001) (quoting Santosky v. Kramer, 455 U.S. 745, 746, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Indeed, "[t]he deprivation of liberty which results from confinement under a state's involuntary commitment law has been termed a `massive curtailment of liberty.'" Shuman v. State, 358 So.2d 1333, 1335 (Fla.1978) (quoting Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972)). Consequently, "[t]hose whom the state seeks to involuntarily commit to a mental institution are entitled to the protection of our Constitutions, as are those incarcerated in our correctional institutions." Id.
Because of that similarity, an examination of the jurisprudence relating to the authorization of specific tests for an indigent criminal defendant is instructive. Generally, a trial court's refusal to provide funds for the appointment of experts for an indigent criminal defendant will not be disturbed absent an abuse of discretion. Martin v. State, 455 So.2d 370, 372 (Fla.1984). Still, the trial court has a duty to appoint an expert witness when required by an indigent defendant, and when that expert's opinion is relevant to the issues of the case. See § 914.06, Fla. Stat. (2003). This is true because an indigent defendant requires more than mere access to the courts; he also requires the necessary raw materials to build his defense. Bullard v. State, 650 So.2d 631, 632 (Fla. 4th DCA 1995) (citing Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). However, an indigent defendant's right to the appointment of experts is not unfettered, and is obviously limited to those situations where the expert's testimony is "relevant and necessary." Bullard, 650 So.2d at 632.
In evaluating whether the trial court abused its discretion regarding the appointment of the expert witness or the *886 authorization for a specific test, an appellate court generally looks at two factors. First, the defendant must establish a particularized need for the test, that is, that the test is necessary for experts to make a more definitive determination and to provide their opinions about the defendant. Second, the court must consider whether the defendant was prejudiced by the trial court's denial of the motion requesting a specific test. Rogers v. State, 783 So.2d 980, 998-99 (Fla.2001).[4] "[A] particularized showing of necessity is the polestar for whether any diagnostic test should be authorized by the trial court." Id.
In Robinson v. State, 761 So.2d 269, 275-76 (Fla.1999), the supreme court found that the trial court did not abuse its discretion in denying a defendant a Single Photon Emission Computed Tomography ("SPECT") scan because "neither doctor testified that the test was necessary to complete their medical opinion; they merely stated that the exam would have been helpful." (Emphasis in original). In finding that the trial court did not err in denying the defendant's motion for a SPECT scan, the court concluded that the results of the SPECT scan would only have "confirmed the doctors' already established opinions, which were substantially accepted by the trial court." Id. at 276. Conversely, in Hoskins v. State, 702 So.2d 202, 209 (Fla.1997), the supreme court found that the defendant's request for a Positron Emission Tomography Scan (PET-Scan) should have been granted. In contrast to Robinson, the expert in Hoskins, not only recommended that the PET-Scan be performed, but also provided the trial court with specific reasons as to why the PET-Scan was necessary in that case. See Hoskins, 702 So.2d at 208-09.
While recognizing that the statutory and case law on this subject is lacking, we see no reason why a similar standard should not be adopted in Ryce Act proceedings, particularly given the significant liberty interests at stake. Applying these standards to the record of the present case, we conclude that Lavender has not established a particularized need for plethysmograph or polygraph testing; that is, that the tests are necessary for his *887 expert to make a more definitive determination as to his current status and to provide an opinion about his future behavior.[5]
In his motion, Lavender claimed that Dr. Legum "conducted a face to face interview with respondent [Lavender], and at that time the respondent requested to be further tested on both the Plethysmograph, and Polygraph...." Lavender also asserted that Dr. Legum forwarded a copy of a letter addressed to Dr. Robert Briody, Director of the Florida Civil Commitment Center, seeking to determine if the "required and requested testing can be accomplished at the ... Center." On appeal, Lavender argues that "due to the unique circumstances in the case the expert professionally and ethically correctly required additional physiological testing to assure the accuracy and reliability of the evaluative process." (Emphasis in original). However, these assertions are not supported by the record. Neither the results from Dr. Legum's interview, nor the letter allegedly sent to Dr. Briody, are included in the record on appeal. Without an adequate record, the appellate court can not properly resolve the underlying issues so as to conclude that the trial court's judgment is not supported. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979).[6]
Because Lavender failed to establish a particularized need for the tests or that the tests would assist the expert in making a more definitive determination as to his mental status, we affirm the trial court's order.
AFFIRMED.
PETERSON and TORPY, JJ., concur.
NOTES
[1] Section 394.918(1), Florida Statutes (2003), provides:

(1) A person committed under this part shall have an examination of his or her mental condition once every year or more frequently at the court's discretion. The person may retain or, if the person is indigent and so requests, the court may appoint, a qualified professional to examine the person. Such a professional shall have access to all records concerning the person. The results of the examination shall be provided to the court that committed the person under this part. Upon receipt of the report, the court shall conduct a review of the person's status.
[2] Section 394.918(3), Florida Statutes (2003), provides:

3) The court shall hold a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged. The person has the right to be represented by counsel at the probable cause hearing, but the person is not entitled to be present. If the court determines that there is probable cause to believe it is safe to release the person, the court shall set a trial before the court on the issue.
[3] A penile plethysmograph is a test designed to measure sexual responsiveness to a variety of stimuli across gender, age, and sexual activity. See In re Care & Treatment of Tucker, 353 S.C. 466, 578 S.E.2d 719, 721 (2003). As used in this setting, a plethysmograph is a device that measures changes in the circumference of the penis. During the test, a cuff, sometimes referred to as a "strain gauge," is placed around the subject's penis and any change in circumference is noted while the subject is presented with materials depicting various sexual scenarios, both appropriate and otherwise. Doe v. Miller, 298 F.Supp.2d 844, 859 n. 8 (S.D.Iowa 2004).
[4] Perhaps no criminal defendant is afforded more protection, procedural safeguards and due process than one facing the death penalty. In the capital case of Rogers v. State, 783 So.2d 980, 998-99 (Fla.2001), the Florida Supreme Court found that the trial court did not abuse its discretion in denying the defendant a PET-Scan. In so doing, the court stated:

A trial court's decision to deny a defendant's motion for a PET-Scan will not be disturbed absent an abuse of discretion. Cf. San Martin v. State, 705 So.2d 1337, 1347 (Fla.1997) (finding that a trial court's refusal to provide funds for the appointment of experts for an indigent defendant will not be disturbed absent an abuse of discretion); see also Robinson v. State, 761 So.2d 269, 275-76 (Fla.1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1563, 146 L.Ed.2d 466 (2000); Hoskins v. State, 702 So.2d 202, 209 (Fla.1997). In evaluating whether the trial court abused its discretion, this Court generally looks at two factors. See San Martin, 705 So.2d at 1347. First, before the trial court will provide a defendant with the necessary funds for a PET-Scan, the defendant must establish a particularized need for the test, that is, that the test is necessary for experts to make a more definitive determination as to whether the defendant's brain is functioning properly and to provide their opinions about the extent of the defendant's brain damage. Cf. San Martin, 705 So.2d at 1347; see also Robinson, 761 So.2d at 275; Hoskins, 702 So.2d at 209. Second, this Court must consider whether the defendant was prejudiced by the trial court's denial of the motion requesting a PET-Scan. Cf. San Martin, 705 So.2d at 1347; see also Robinson, 761 So.2d at 275-76; Hoskins, 702 So.2d at 210.
Rogers, 783 So.2d at 998-99.
[5] Nor do we express any opinion regarding the admissibility of such testing if it were performed.
[6] In addition to its contention that Lavender failed to establish any particularized need for the tests in question, the State argues that "courts are uniform in their assertion that the results of penile plethysmographs are inadmissible as evidence because there are no accepted standards for this test in the scientific community." See Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1266 (9th Cir.2000) (citing United States v. Powers, 59 F.3d 1460, 1471 (4th Cir.1995)). Irrespective of any evidentiary value, Lavender contends in his brief that the same tests are administered by Civil Commitment Center personnel as part of the diagnostic and treatment regimen of those committed under the Ryce Act. If true, that would certainly undermine the State's opposition to the administration of a polygraph or plethysmograph by a qualified expert appointed for the committed person pursuant to section 349.918(1). However, none of this evidence was presented to the trial court. The record we are reviewing sheds no light on diagnostic and treatment protocols of the Civil Commitment Center or the reliability of the tests in question.