McCORD, Judge.
This is an appeal from a final judgment denying an injunction. Appellant in the court below sought to enjoin appellee from engaging in the business of transporting petroleum products, in bulk, for compensation, on public highways, between points in Jacksonville, Florida, in alleged violation of § 323.02, Florida Statutes, which provides:
“No motor carrier shall operate any motor vehicle for the transportation of persons or property for compensation on any public highway in this state without first having obtained from the public service commission a certificate of public convenience and necessity or a permit as hereinafter provided or a certificate of registration of interstate commerce commission authority as hereinafter provided.”
Section 323.01(5), Florida Statutes, defines public highway to mean “every public *459 street, road or highway in this state
Appellee contends its operations fall within the exemption provision of Section 323.29, Florida Statutes, which provides as follows:
“There also shall be exempted from the provisions of this part, and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory, or between cities and town whose boundaries adjoin, where such business of carriage is regulated by the legislative body of such cities or towns.” (Emphasis supplied)
Section 323.24, Florida Statutes, authorizes appellant to bring an action such as this. It provides as follows:
“Any motor carrier which operates upon the highways of this state . . . without first having obtained from the public service commission a certificate, a permit, or a license as prescribed by this part, . . . may be enjoined by the courts of this state, from any such violation or such unlawful or unauthorized operation within this state, at the instance of the commission or any citizen or taxpayer of this state.”
The record shows that appellee has been issued no authority by the Florida Public Service Commission to conduct its operations. Appellee contends that its business of carriage falls within the exemption of § 323.29, and relies upon its having been issued an occupational license by the City of Jacksonville and a permit under the Jacksonville Municipal Code, § 904-16.93, which provides as follows:
“No person shall engage in the business of delivering flammable or combustible liquids from tank vehicles without a permit.”
As to the occupational license, such a license is required of all businesses that operate within the corporate limits of Jacksonville. Issuance of such a license is obviously not a regulation by the City of the business of carriage of appellee. It is a taxing and revenue measure. See Chapters 803 and 804, Ordinance Code of the City of Jacksonville. Where a license fee is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax. See 21 Fla.Jur., Licenses and License Taxes, § 9.
As to Ch. 904, Ordinance Code of the City of Jacksonville, which is the fire prevention code, we find its purpose and intent stated in § 904 — 1.1 as follows:
“It is the intent of this Code to prescribe regulations consistent with nationally recognized good practice for the safeguarding to a reasonable degree of life and property from the hazards of fire and explosion arising from the storage, handling and use of hazardous substances, materials and devices, and from conditions hazardous to life or property in the use or occupancy of buildings or premises.”
The permit that is required of those who engage in delivering flammable or combustible liquids from tank vehicles (§ 904— 16.93 of the City Code above quoted) is defined by § 904 — 1.9 of the Code as a permit to handle hazardous materials. That section states:
“Such permit does not take the place of any license required by law.”
This permit is issued to any and all who pass inspection by the fire marshal and obtain his approval of the vehicle or vehicles to be used as being in compliance with the code. The code establishes standards for the construction and operation of the tank vehicles. All of Ch. 904 relates to safety from fire and has nothing to do with regulation of the business of carriage by the City of Jacksonville. The City has no ordinance which provides for the issuance of franchises to motor carriers of petroleum products nor is there any regulation by the *460 City of the rates, services or number of such carriers.
The legislative purpose of the Motor Carrier Act, Ch. 323, Florida Statutes, was stated by the Supreme Court in Central Truck Lines v. Railroad Commission, 118 Fla. 526, 160 So. 22 (1935), as follows:
“As evidence of the legislative purpose to be served by chapter 14756, supra, that act contains an express requirement to the effect that in exercising its functions under the auto transportation law the Railroad Commission shall (not may) take into consideration the effect that the exercise of its powers of regulation and supervision of motor carriers may have upon transportation as a whole within any particular territory as to which the licensing of motor vehicle facilities may be sought. Another object to be achieved by that act (perhaps its most important one) is to foreclose the inordinate use of the public highways as a means of conducting carrier service for profit in cases where there is no showing of public convenience or necessity therefor under the facts of a particular case wherein permission is sought for a certificate approving such use by a particular applicant.
***** *
That purpose, as clearly evidenced by its language and implication, was to so supervise, adjust, regulate, and control the co-ordination of public carrier services, both rail and motor, inter sese, as well as toward the state and the general public, as to attain therefrom the fullest measure of protection for the highways and at the same time insure the maintenance of an adequate transportation system to serve the essential needs of the people.”
This purpose is applicable not only to regulation by the Public Service Commission (formerly the Railroad Commission) but also it is applicable to regulation by the cities under the specific wording of the exemption contained in the act, in that it exempts from the act intracity carriers only “where such business of carriage is regulated by the legislative body of such cities or towns.” The mere adoption of safety standards for the handling of flammable liquids to be complied with by all who transport such materials within the city clearly does not constitute regulation by the city of the business of carriage of the carrier that is contemplated by the exemption.
In support of its position appellee relies upon City of West Palm Beach v. Florida Public Service Commission, Fla., 224 So.2d 322 (1969). There the City of West Palm Beach had enacted a franchise ordinance granting a non-exclusive franchise to Transit Company to operate a motor bus system for the transportation of passengers over the streets of the city. The ordinance provided, among other things, that the rates could not be increased without approval of the city commission after notice and a public hearing; that the rates and schedules must be agreed upon by the company and the city commission “keeping in mind that any such change of routes or time schedules shall always be in the public interest”; and provided for the maintenance and repair of equipment, city inspection of the equipment, and insurance coverage. In a proceeding before the Florida Public Service Commission, that commission held the city had lost jurisdiction over Transit Company upon the ground that the city had failed to enforce or had abandoned the enforcement of the ordinance, and that, therefore, the business of carriage was not regulated by the legislative body of the city. Upon certiorari, the Supreme Court ruled that the enactment of the franchise ordinance, containing the many regulatory provisions above cited, was such regulation contemplated by the exemption contained in § 323.29, Florida Statutes, saying:
“It is quite apparent that the operation of the system is within an exempt zone pursuant to the provision from Section 323.29 quoted above, and under a city franchise ordinance duly accepted by the Company.”
*461 Finding that the transportation was regulated by the legislative body of the city by the enactment of the comprehensive franchise ordinance, the court held that the requirements of the exemption were met and that the subsequent failure of the city to enforce the regulatory ordinance to the satisfaction of the Public Service Commission did not oust the jurisdiction of the city and defeat the exemption. The court said:
“The alleged failure of the City to regulate, i. e., to enforce the regulatory provisions of the franchise ordinance is no justification for the Commission to assume jurisdiction over the transit system. ' * * * the validity of an ordinance is not affected by failure to enforce it * * * or by the fact that it is repeatedly violated. * * * ’ (McQuillin, Municipal Corporations, 3d Ed., Vol. 6, Sec. 20.09.) Also from the same text and volume, it appears: 'Failure to enforce an ordinance does not repeal it.’ ”
The Supreme Court suggested that the transit company had recourse to the courts if it was unable to secure rate relief from the city. It thus distinguished between the enactment by the legislative body of the city of a regulatory franchise ordinance and the enforcement thereof. The city, under the ordinance, was regulating the business of carriage. It had established the rates and charges which it would allow the company to collect. The controversy was over the city’s refusal to allow a rate increase. The refusal of the city to grant a rate increase was held to be no basis for construing § 323.29, supra, to mean that the exemption no longer applied to the transit company because its business of carriage was not being regulated by the city. In the case sub judice, the situation is not one of regulation ■with unsatisfactory enforcement — it is a situation where the city has not enacted an ordinance providing for regulation of the business of carriage.
Appellee contends that regulation of petroleum carriers in the City of Jacksonville, other than as to safety is unnecessary; that if the checks and balances of competition in Jacksonville between the various independent carriers is such that the general public is well served, there is no need to require regulation. This contention that open competition between carriers (or certain types of carriers) is good and should be allowed is a philosophical one that flies in the face of the Motor Carrier Act and should be addressed to the legislature rather than to the court.
Reversed and remanded with directions to grant the injunction prayed for by appellant.
RAWLS, C. J., and JOHNSON, J., concur.