365 So.2d 806 (1978)
COULTER ELECTRONICS, INC., Appellant,
v.
DEPARTMENT OF REVENUE of the State of Florida, Appellee.
No. JJ-235.
District Court of Appeal of Florida, First District.
December 29, 1978.
*807 Brian C. Ellis and Robert B. Glenn, Jr., of Holland & Knight, Tampa, for appellant.
E. Wilson Crump, II, Asst. Atty. Gen., for appellee.
BOOTH, Judge.
This cause is before us on appeal from final agency action upholding the corporate income tax deficiencies assessed by the Department of Revenue (DOR) against Coulter Electronics, Inc., (Coulter) of $39,436 for the 1973 tax year and $324 for the 1974 tax year.
Two issues were presented below and are before us on appeal: (1) Whether certain transactions between Coulter and its subsidiary corporations are within the definition of "sales" and includable in the sales factor of the corporate income tax apportionment formula of Florida Statute § 214.71(3), and (2) whether changes made by the Division of Statutory Revision and Indexing in the 1971 enactment which is codified as Florida Statute § 214.71(3) were effective during the taxable years in question here.
The facts are that Coulter manufactures and sells machinery and instruments used by the medical profession. Coulter has two subsidiary corporations: (1) Coulter Diagnostics, Inc. [Diagnostics] a 100% owned subsidiary, that produces chemical agents used by customers in connection with the machinery and instruments manufactured by Coulter and (2) Blood Services [Services] *808 a 92% owned subsidiary, that provides materials used and consumed by Diagnostics in manufacturing chemical agents. Coulter, Diagnostics and Services filed consolidated federal and Florida income tax returns for the fiscal years ending March 31, of 1973 and 1974, the years in question here.
The DOR's claim of the right to additional tax is based on transactions between Coulter and the subsidiaries which DOR contends are "sales." It is undisputed that Coulter makes all the sales to ultimate customers of products manufactured by Diagnostics and that Diagnostics does not make sales to unrelated third parties. Thus, while all products manufactured by Diagnostics are actually delivered to the customer by Diagnostics, the invoice is rendered by Coulter and payment is made by the ultimate customer to Coulter. Services sells most of its products to Diagnostics and the materials produced by Services are used and consumed by Diagnostics in manufacturing its products. Because Coulter, rather than Diagnostics, renders the invoices to customers for products manufactured and delivered by Diagnostics to outside customers, Coulter treats Diagnostics as having sold the product to Coulter for internal accounting purposes. Similarly, Coulter treats Services as having sold its products to Diagnostics for internal accounting purposes. However, no invoices for such "inter-company sales" are prepared on a "sale-by-sale" basis, and instead there is merely a monthly recapitulation prepared of all such "sales." In addition, no payments are ever made by Coulter to Diagnostics, or by Diagnostics to Services, with respect to the so-called "sales." Finally, there is no delivery of any product from Diagnostics to Coulter. The products in question are delivered by Diagnostics to the ultimate customer. The so-called "sales" made by Services to Diagnostics, and by Diagnostics to Coulter, are called "sales" by the parties only for the sake of simplicity. These inter-company sales are disregarded for the purpose of federal income tax.
DOR contends that the foregoing transactions are "sales" generating income apportioned to Florida under Florida Statute Chapter 214. Chapter 214 generally provides that the portion of a taxpayer's federal taxable income subject to tax in Florida shall be determined by multiplying such income by a three-part apportionment formula consisting of the ratio of the taxpayer's Florida property to its total property everywhere; the ratio of the taxpayer's Florida payroll to its total payroll everywhere; and the ratio of the taxpayer's Florida sales to its total sales everywhere. The sales factor is then weighted 50% and the property and payroll factors are each weighted 25%.
We hold that the inter-company transactions in this case do not constitute sales within the meaning of Florida Statute § 214.71(3) and § 220.15(1), and are not required to be included in Coulter's sales factor for the purpose of the apportionment formula for the years in question. Under § 220.15(1) the term "sales" as used in the apportionment formula, is defined to include gross receipts. In this way the Legislature included within "sales," for the purpose of the apportionment formula, the gross receipts derived from services or other sources not traditionally viewed as sales. This does not mean, however, that the basic indicia of a sale have been dispensed with by the statute.
There are none of the indicia of a sale present in the inter-company transactions here. There is no transfer or exchange of goods or services and no payment, either actual or contemplated. The inter-company transactions also lack "delivery," the factor under Florida Statute § 214.71 which determines whether a sale of tangible personal property has occurred in Florida. Coulter has business purposes for its internal account procedures which, basically, allow Coulter to send the invoices to, and receive payments from, the actual customers for the sales and services of both parent and subsidiary corporations. Coulter has already paid the income tax due on the basis of all sales to customers in Florida. The inclusion of the inter-company transactions would, in this case, artificially *809 inflate (and in other cases artificially deflate) the sales factor with corresponding effect on the tax paid by businesses operating in Florida and in other states in the parent/subsidiary form. The result would be to defeat the legislative intent in the enactment of the apportionment formula, which is to tax that portion of a multi-state corporate income derived from business activities in Florida.
There is a second basis for our holding in this case and that is that for the years 1973 and 1974 the provision of Florida Statute § 214.71(3), relied on by DOR as authority for its deficiency assessment applied only to financial organizations, which appellants admittedly are not. The statute in question, as enacted by Laws of 1971, Chapter 71-359, § 19, effective July 1, 1971, provided:
"(3) The sales factor [for apportionment formula] is a fraction, the numerator of which is the total sales of the taxpayer in this state during the taxable year or period and the denominator of which is the total sales of the taxpayer everywhere during the taxable year or period.
(a) Sales of tangible personal property in this state if
(1) The property is delivered or shipped to a purchaser within this state ...
* * * * * *
(b) Sales of a financial organization, including, but not limited to, banking and savings institutions, investment companies, real estate investment trusts, and brokerage companies, shall be in this state if derived from:
(1) Fees, commissions ...
(2) Gross profits from trading in stocks ...
(3) Interest and dividends received within this state;
(4) Interest charged to customers . .
(5) Any other gross income resulting from the operation as a financial organization with this state. In computing the amounts referred to in this subsection, any amount received by a member of an affiliated group (determined under § 1504(a) of the Internal Revenue Code, but without reference to whether any such corporation is an `includible corporation' under § 1504(b) of the Internal Revenue Code) from another member of such group shall be included only to the extent such amount exceeds expenses of the recipient directly related thereto." (emphasis added)
Thereafter, the Division of Statutory Revision and Indexing (Division) undertook to remove the above underscored sentence from § 214.71(3)(b)(5) and convert that sentence into a new and separate subsection, to wit: § 214.71(3)(c), with the effect that a provision applicable as enacted to "financial organizations" appeared to be applicable to all corporations.[1] The change made was substantive and was beyond any power vested in the Division. Therefore, from the date of the enactment in 1971 until the publication of the 1973 official acts which codified the 1971 statutes, the session law controlled.[2] The 1973 official *810 statutes were published after the fiscal years here in question. For this reason, the presumed legislative validation of the Division's change in the statute had not occurred on the critical dates here. The official and controlling version of the statutes for the years in question remained the session law as enacted by the legislature.
A similar instance of substantive changes in a statute made by the Division of Statutory Revisions was dealt with by this Court in McCulley Ford, Inc. v. Calvin, 308 So.2d 189 (Fla. 1st DCA 1975) and Lynch-Davidson Motors v. Calvin, 308 So.2d 197 (Fla. 1st DCA 1975). In the McCulley Ford case, this Court ruled, in pertinent part as follows (308 So.2d at 193, 194, 195):[3]
"The statutory revision service redrafted chapter 70-424 arbitrarily and contrary to the law as stated by our Supreme Court in Jones v. Christina, Sup.Ct.Fla. 1966, 184 So.2d 181 and Foley v. State, Sup.Ct.Fla. 1951, 50 So.2d 179. It did so by substituting the word `department' whenever the Legislature had used the word `director'... . That action the statutory revision service had no authority to take.
* * * * * *
[S]ince Florida Statutes 1973 were not published prior to jurisdiction vesting in this Court, and were not in effect at the time of the actions giving rise to this controversy, we have no occasion to here consider their effect.
Section 320.642, Florida Statutes, as printed in the 1971 Florida Statutes, therefore, is no more than prima facie evidence of the law then in effect. The enrolled act, Chap. 70-424, enacted by the Florida Legislature in 1970 stood as the official primary evidence of the law as enacted. It rebuts the prima facie effect of Section 320.642, Florida Statutes 1971."
Accordingly, the order below is REVERSED and the cause REMANDED with directions that the deficiency assessments against appellant be vacated and withdrawn.
BOYER, Acting C.J., and MILLS, J., concur.
NOTES
[1] The three-point apportionment formula of Florida Statute § 214.71 is taken from the Illinois apportionment statute (Ill.Stat. Annotated Chapter 129, § 3-304). Under the Illinois law the sentence in question, referring to sales between members of an affiliated group, is limited to financial organizations in the same manner as the original Florida legislative enactment.
[2] Florida Statutes of 1973, § 11.242(5)(c): "All laws of a general and permanent nature which are of general application throughout the state enacted by any current session of the Legislature shall be compiled ... but all chapters and sections so compiled shall be indicated with a history note, clearly showing that said section or chapter was not a part of the revision at the time of its adoption and giving the proper legislative session law chapter and section number. The matter included under the authority of this subsection shall be incorporated as enacted in any current session and shall be prima facie evidence of such law in all courts of the state."

Florida Statutes of 1973, § 11.2421: "The accompanying revision, consolidation and compilation of the public statutes of 1971 ... is adopted and enacted as the official statute law of the state under the title of `Florida Statutes 1973' and shall take effect immediately upon publication ..."
See Volume I, Florida Statutes 1973 at page vii; 34 Fla.Jur., Statutes, § 3 at 136.
[3] To like effect is Shuman v. State, 358 So.2d 1333 (Fla. 1978).