G. R. McClelland City Attorney Largo
QUESTIONS:
1. Does s. 205.193, F. S., preclude the City of Largo from levying and collecting an occupational license tax from mobile home manufacturers and dealers, licensed by the state pursuant to ch. 320, F. S., who have a permanent location or branch offices located within the city?
2. Does s. 205.193 prohibit the city from levying and collecting an occupational license tax from mobile home park operators, licensed by the state as mobile home dealers or manufacturers, who also engage in the business of selling mobile homes?
3. Does s. 205.193 require a mobile home dealer to obtain a separate, city-issued (revenue type) occupational license for his dealer operation at a permanent business location (a mobile home park) within the city?
SUMMARY:
Until legislatively or judicially clarified or determined otherwise, s. 205.193, F. S., does not preclude the City or Largo from levying and collecting an occupational license tax from mobile home manufacturers and dealers licensed as such by the state pursuant to ch. 320, F. S., who have a permanent location or branch offices located within the city. Nor does s. 205.193
prohibit the city from levying and collecting an additional occupational license tax as a mobile home dealer from a mobile home park operator, licensed by the state as a mobile home dealer or manufacturer, who also engages in the business of selling mobile homes at such mobile home park. Section 205.193 requires a mobile home dealer to obtain a separate city-issued (revenue type) occupational license for his dealer operation at a permanent business location (a mobile home park) within the city.
Your inquiry notes confusion as to the proper construction of ch. 79-120, Laws of Florida, since the statutory reviser codified the law as s. 205.193, F. S., placing it in or transferring it (from ch. 320), to ch. 205, F. S., which deals with local occupational license taxes. You also state your concern over certain changes in the wording of the caption or section heading of s. 320.8286, as created and enacted by ch. 79-120. Additionally, your letter notes that certain mobile home dealers and manufacturers in your locality are taking the position, based on the placement of the provisions of ch. 79-120 in ch. 205, that ch. 79-120 precludes cities and counties from levying a local occupational license tax on them.
Since your questions are interrelated they will be answered jointly.
Chapter 79-120, Laws of Florida, which was an `act relating to mobile homes . . . prhoibiting counties and local governments from licensing mobile home dealers, mobile home manufacturers, or their employees to engage in setup operations,' created s. 320.8286, F. S., which provides in relevant part:
 320.8286 Setup operations; county license prohibited. — No county, municipality, or other unit of local government may require a duly licensed mobile home dealer or a duly licensed mobile home manufacturer, or an employee of such dealer or manufacturer who performs setup operations as defined in s. 320.822, to be licensed to engage in such operations by the county, municipality, or other unit of local government. Provided, however, such dealer or manufacturer shall be required to obtain a local occupational license for his permanent business location or branch office, which license shall not require for its issuance any conditions other than those required by Chapter 320, Florida Statutes. (Emphasis supplied.)
I initially note that both the title and the text of ch. 79-120,supra, purport to proscribe only the licensing of state-licensed mobile home dealers or manufacturers or their employees to engagein the designated setup operations. No other licensing of any form or nature is prohibited, and no other person or entity engaged in the business of performing such setup operations (as defined by s.320.822(7), F. S.), falls within the scope of the prohibition contained in ch. 79-120 (or in s. 205.193, F. S.).
The `local occupational license' referred to in the proviso of the above act means an occupational license as defined by s.205.022(1), F. S., and has reference to the occupational license tax imposed under the provisions of ch. 205, F. S. Such occupational licenses are revenue licenses, not regulatory licenses such as a municipality may impose under s. 166.221, F. S., except when the regulatory activity has been preempted by the state. See ss. 205.022(1) and 166.221; cf. AGO 074-21. The term `licensed to engage in (setup operations as defined in s.320.822(7), F. S.),' as used in ch. 79-120, supra, and in s.205.193 does not differentiate between revenue licenses or license taxes and regulatory licenses or fees. Neither does the text of the title of ch. 79-120. The term `licensed,' in the context of ch. 79-120, therefore, applies to both forms or methods of licensing. See generally 53 C.J.S. Licenses ss. 1, 3, and 4, and Black's Law Dictionary, (4th Rev. ed. 1968), License and LicenseTax at 1067 and 1070; see Tamiami Trail Tours, Inc. v. City of Orlando, 120 So.2d 170 (Fla. 1960); Sandstrom v. City of Fort Lauderdale, 133 So.2d 755 (Fla. 1961); Finlayson v. Conner,167 So.2d 569 (Fla. 1964); and Petroleum Carrier Corp. v. Silco Petroleum Carrier, Inc. 312 So.2d 457 (1 D.C.A. Fla., 1975). The first sentence, standing alone, would operate to effectively prohibit a municipality from exacting any revenue or regulatory license or any tax or regulatory fee from state-licensed mobile home dealers or mobile home manufacturers engaged in the setupoperations defined in s. 320.822(7) and to preempt such taxing or regulatory authority to the state. See ss. 166.021(1) and (3)(c) and 166.221, F. S.; see also s. 1(a), Art. VII, State Const. However, the proviso or exception from the general prohibition contained in ch. 79-120 and in s. 205.193 operates to prevent any misinterpretation and takes out of the general licensing prohibition the `local occupational license' or occupational license tax required under the provisions of ch. 205 for state-licensed mobile home dealers or manufacturers in those capacities for their permanent business locations or branch offices within the affected municipalities. See ss. 205.022(1),205.042, and 205.043. The designated setup operations are, as to mobile home dealers or manufacturers and their employees, regulated by the state, and municipalities may not tax or regulate such activity. Neither may they prescribe any conditions on the issuance of the above-mentioned local occupational license other than those required by ch. 320, F. S. Section 1, ch. 79-120, and s. 205.193. The purpose of a provisio is, inter alia, to restrain or except something from a statute or to exclude some possible ground of misinterpretation. Cragin v. Ocean Lake Realty Co.,133 So. 569 (Fla. 1931), and State v. State Racing Commission,112 So.2d 825 (Fla. 1959). A proviso is to be construed together with the general prohibition and effect given to each part of the statute, Therrell v. Smith, 168 So. 389 (Fla. 1936); its office is not to enlarge or extend the act of which it is a part, Farrey v. Bettendorf, 96 So.2d 889 (Fla. 1957). Thus, the proviso under consideration operates to exclude any possible ground of misinterpretation and to take out of the general prohibition contained in ch. 79-120 and s. 205.193 only the local occupational license or occupational license tax required of state-licensed mobile home dealers or manufacturers for their permanent business locations or branch offices. Therefore, in response to your first question, it necessarily follows that an affected municipality is not precluded from levying and collecting an occupational license tax under the provisions of ch. 205 from a state-licensed mobile home dealer or manufacturer, in such capacity, who maintains a permanent business location or branch office within the municipality.
Except for the section heading, the provisions of s. 205.193, F. S., are identical to those contained in s. 1 of ch. 79-120, supra, as hereinbefore set forth, and the foregoing analysis and construction of the provisions of ch. 79-120 and its effect and operation apply with equal force and effect to s. 205.193. However, if in fact and law the above-noted transfer of s. 1, ch. 79-100 (s. 320.8286, F. S.) and changes in the wording of the section heading thereof have in any way affected the legislative intent as expressed in ch. 79-120 or worked any substantive changes in the law as enacted, the session law is the primary evidence of the law and governs at least until the 1981 reenactment of Florida Statutes 1979. Cf. AGO 080-88. Therefore, in order to eliminate the above-noted confusion regarding the construction of this law, and in order to legislative clarify this matter, a reviser's bill or other appropriate legislation should be submitted to the 1981 Legislature for clarification of the legislative intent. In this regard, the appearance of s. 320.8286, as enacted by s. 1 of ch. 79-120, in a chapter of the statutes different from that stipulated in the session law cannot alter legislative intent. In Williams v. Jones, 326 So.2d 425 (Fla. 1976), the Supreme Court of Florida held, in a similar context, that placement by the statutory revisers of a taxing provision in the chapter on exemptions could not affect the intent of the Legislature as expressed in the session law. It has long been the rule that the statutory revision power is intended only `for the purification of the statutory law and not to make changes in the substantive law without express legislative action.' Jones v. Christina, 184 So.2d 181 (Fla. 1966). See s. 11.242, F. S., which sets forth duties of the joint Legislative Management Committee, in regard to statutory revision.
It is also the rule that the Division of Statutory Revision and Indexing is without power, via removal and addition of words or sentences, to make substantial statutory changes. Coulter Electronics, Inc. v. Department of Revenue, 356 So.2d 806 (1 D.C.A. Fla., 1978), and Shuman v. State, 358 So.2d 1333 (Fla. 1978). It has been held that when substantial statutory changes have been made by the reviser, the session law controls `from the date that the statute was enacted until the publication of official acts codifying the enactment . . . .' Coulter, supra,365 So.2d 806, at 807. Such revision and compilation of session laws are not intended to have the force and effect of law until the succeeding session at which time the Legislature has a chance to examine the compilation. City of Coral Gables v. Brasher,120 So.2d 5 (Fla. 1960). Moreover, this office has previously opined, in AGO 075-148, that:
 Although Statutory Revision in compiling the general laws any transfer a chapter or law, or part thereof, from one location in the statute books to another or change the form or arrangement thereof by transferring the same . . . the reviser is without authority to make law or to effect any change in the substantive law. The fact that an existing statute, or part thereof, is placed by the reviser in, or is transferred to, another chapter of the statutes is of no controlling effect. The Legislature, and it alone, is clothed with the lawmaking power and no amendments of laws or changes therein made by the reviser can become law without express legislative action through the process of a reviser's bill considered, approved, and enacted by the Legislature. (Emphasis supplied.)
Thus, transfer of ch. 79-120, supra, originally directed to be codified as s. 320.8286, F. S., to ch. 205, F. S., could not have and has not wrought any substantive change in the law. No substance attaches to a mere section number. E.g., Williams v. Jones, supra. Cf. s. 11.242(5)(c). F. S.
Your letter also notes that the caption that appears in ch. 79-120, supra, was `setup operations; county license prohibited,' but that the revision process produced `mobile home setup operations; exemption' as the caption for s. 205.193, F. S. The legislative intent expressed in the title of ch. 79-120 and in the body thereof will control over any apparently inconsistent caption or section heading contained in either ch. 79-120 or s. 205.193.
It appears that the caption as enacted by ch. 79-120, supra, is part of the statute since it does follow the enacting clause in the session law. See Hillsborough County v. Price, 149 So.2d 912
(2 D.C.A. Fla., 1963). Accord: Berger v. Jackson, 23 So.2d 265, at 268 (Fla. 1945), holding that a `section heading' inserted by the Legislature is `part of the law itself and not in any wise extrinsic to the enacting clause,' and AGO 057-314. Yet, when viewed in the context of the transfer of the provisions of ch. 79-120 to ch. 205, F. S., the slight change in the wording of the caption does not appear to have materially changed its meaning. Moreover, even if this change were considered as a substantial alteration of legislative intent, the alteration by the statutory reviser would be of no force and effect at this time. See Coulter,supra.
Alternatively, if the language added by the revisers was viewed as nothing more than an editorial device, it would not be binding. Captions following a section number, unless they are specified by statute or arise by necessary implication, are nothing more than catch phrases, inserted as an aid or convenience to research, and as such have no legal intendment. Agner v. Smith, 167 So.2d 86, at 89 (1 D.C.A. Fla., 1964). Such statutory section headings inserted by the statutory revisers have been referred to as `a convenient visual reference to the content' of the statute, not a part of it. Askew v. MGIC Dev. Co. of Florida, 262 So.2d 227, at 228 (4 D.C.A. Fla., 1972).
Based upon the foregoing considerations, I conclude that the reviser's placement of this law in ch. 205, F. S., rather than ch. 320, F. S., has not caused any change in it as enacted. Similarly, the above-noted changes in the wording of the caption or section heading have brought about no substantial change in the legislative intent or effect of the statute.
Your second question asks whether s. 205.193, F. S., prohibits the city from levying and collecting an occupational license tax from mobile home park operators, licensed by the state as mobile home dealers or manufacturers, who also engage in the business of selling mobile homes. To reiterate, the proviso, or exception from the general prohibition contained in ch. 79-120, supra, and in s.205.193, operates to take out of the general licensing prohibition the `local occupational license' or occupational license tax required under the provisions of ch. 205, F. S., for state-licensed mobile home dealers or manufacturers for their permanent business locations or branch officers within the affected municipalities. The language of the proviso expressly states `such dealer or manufacturer shall be required to obtain a local occupational license for his permanent business location or branch office.' Chapter 79-120. Even though a mobile home park operator may be licensed by a municipality as such operator to carry on the business of operating a mobile home park, nonetheless if such operator is also licensed by the state as a mobile home dealer and engages in the business of selling mobile homes at such mobile home park, he must also obtain an occupational license from and pay an occupational license tax to the municipality in his capacity as a mobile home dealer. See Lee v. Jacksonville Gas Co.,190 So. 800 (1939), holding that appliance sales by a gas manufacturing and distributing company — which kept gas appliances on display in its general office, and whose employees solicited sales of these appliances — were taxable under `store' tax, even though no profit was made on the sale of the appliances. Cf. s.320.77(3), F. S., providing that an applicant for a state license as a mobile home dealer shall certify that the business of a mobile home dealer is the principal business which shall be conducted at the exact, permanent location of the place of business, but that this requirement shall not apply to mobile home park operators licensed as mobile home dealers.
Your third question has been answered by the response to questions 1 and 2.
Prepared by: Anne Curtis Terry, Assistant Attorney General