The Honorable Doyle Conner Commissioner of Agriculture The Capitol Tallahassee, Florida 32301
Dear Commissioner Conner:
This is in response to your request for an opinion on substantially the following question:
 IS A FAIR ASSOCIATION, INCORPORATED UNDER THE PROVISIONS OF CH. 616, F.S., AND WHICH OPERATES UNDER A PERMIT GRANTED BY THE DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES SUBJECT TO PAYMENT OF PERMIT FEES IMPOSED PURSUANT TO A MUNICIPAL ORDINANCE?
According to your letter of inquiry, the Central Florida Fair, operated by a nonprofit corporation of agricultural, business and civic leaders, is situated in the City of Orlando and operates under a permit issued by the Florida Department of Agriculture and Consumer Services (hereafter the department). See, s. 616.15, F.S., providing that no public fair or exposition may be conducted by an association incorporated under the provisions of Ch. 616, F.S., without a permit issued by the department as prescribed therein. Chapter 18 of the City Code of Orlando, a copy of which was attached to your letter, operates to require procurement of a permit and payment of a fee for the conduct of outdoor shows or assemblages in temporary structures. Section 18.01(1), City Code of Orlando, provides that "[a]ny person proposing to conduct a circus, sideshow, bazaar, revival meeting or any other outdoor show or assemblage for any purpose whatsoever, in/under any tent or other temporary structure, shall first procure a permit from the city building inspection department." Section 18.01(2) imposes a fee of thirty dollars ($30.00) "to cover the expenses incident to processing of the application for permit and to cover the costs of inspections in connection therewith. . . ." The permit is valid for no more than sixty (60) days from the date of issuance. Section 18.01(3), City Code of Orlando.
As a prerequisite to the issuance of the foregoing permit, the city police, fire and building inspection departments and, where sanitary facilities are provided, the Orange County Health Department must inspect the premises and the tents or other temporary structures. Moreover, the city zoning and traffic engineering departments must review the permit application to ensure compliance with other applicable provisions of the city code. Section 18.02, City Code of Orlando. Section 18.04 sets forth the nature of the inspection including examination of the grounds, structure, aisles, exits, fire appliances and canvas tent or other such structure. The balance of Ch. 18 includes, inter alia, regulatory provisions for evidence of fireproofing and fire protection, sanitary facilities, occupancy and police protection, all with respect to the conduct of such outdoor shows or assemblages.
You inquire whether the fair association, incorporated under Ch.616, F.S., and operating under a permit issued by the department, is subject to the payment of such permit fees imposed by the municipality in light of the provisions of s. 616.12, F.S. It is to be initially emphasized that the Attorney General's legal authority to address questions of law does not encompass any power or authority to comment upon the validity of a duly enacted municipal ordinance; rather, any such ordinance must be considered presumptively valid unless and until determined otherwise by a court of competent jurisdiction in appropriate legal proceedings. See, AGO 73-172. However, it is clear that municipal ordinances are inferior and subordinate to state law. Thus, an ordinance may not conflict with any controlling provision of a state statute. If any doubt exists as to the degree of power attempted to be exercised which may affect the operation of a state statute, the doubt must be resolved in favor of the statute and against the ordinance. City of Miami Beach v. Rocio Corp., 404 So.2d 1066 (3 D.C.A.Fla., 1981), pet. for rev. den., 408 So.2d 1092 (Fla. 1981); Rinzler v. Carson, 262 So.2d 661 (Fla. 1972); AGO 79-71.
Chapter 616, F.S., generally regulates public fairs and expositions held in this state. See, e.g., ss. 616.091 (trade and safety standards for operation of public fairs and expositions);616.15 (permit from Department of Agriculture and Consumer Services required); 616.17 (display of minimum exhibits);616.12(1), F.S. (licenses upon certain shows required). And see, s. 616.01, F.S., providing for the formation of a not for profit association for the purpose of conducting and operating public fairs or expositions for the benefit and development of the educational, agricultural, horticultural, livestock and other resources of the state or county or counties of this state. Section 616.12(2), F.S., provides:
 Any fair association incorporated under the provisions of this chapter and securing the required fair permit from the department is exempt from occupational license fees, occupational permit fees, or any occupational taxes assessed by any county, municipality, political subdivision, or agency, or instrumentality thereof.
*2327 It appears that the phrase "occupational license fees" (e.s.) as found in s. 616.12(2), F.S., supra, relates or refers to those regulatory fees authorized pursuant to s. 166.221, F.S., which provides as follows:
 A municipality may levy reasonable business, professional, and occupational regulatory fees, commensurate with the cost of the regulatory activity, including consumer protection, on such classes of businesses, professions, and occupations, the regulation of which has not been preempted by the state or a county pursuant to a county charter.
Thus, a municipality may impose an occupational license fee for the purpose of regulation and requiring compliance with certain prescribed standards and conditions for the conduct of such business, profession or occupation, such fee to be limited to a sum commensurate with the cost of the regulatory activity. Cf., s.166.222, F.S., which empowers governing bodies of municipalities to provide a schedule of reasonable inspection fees in order to defer the costs of inspection and enforcement of the provisions of their building codes.
Chapter 205, F.S., governs local occupational license taxes and authorizes municipalities to levy an "occupational license tax." See, s. 205.042, F.S. Section 205.022(1), F.S., defining the phrase "local occupational license," distinguishes between a local occupational license and a regulatory permit. Pursuant to s.205.022(1), a local occupational license is defined as
 the method by which a local governing authority grants the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction. It does not mean any fees or licenses paid to any board, commission, or officer for permits, registration, examination, or inspection. Unless otherwise provided by law, these are deemed to be regulatory and in addition to, but not in lieu of, any local occupational license imposed under the provisions of this chapter. (e.s.)
See, AGO's 76-30 and 74-21. Section 18.01(2), City Code of Orlando, expressly provides that the thirty dollar fee for the permit required by that chapter of the code is "to cover the expenses incident to processing of the application for permit and to cover the costs of inspections in connection therewith. . . ." Thus, such permit fee would not appear to be an occupational license tax pursuant to s. 205.042, F.S., since such taxes are generally enacted solely or primarily for revenue purposes. See generally, 53 C.J.S. Licenses s. 3(b). See also, Sandstrom v. City of Fort Lauderdale, 133 So.2d 755 (2 D.C.A.Fla., 1961), cert. den., 139 So.2d 695 (Fla. 1962); Petroleum Carrier Corporation v. Silco Petroleum Carrier, Inc., 312 So.2d 457 (1 D.C.A.Fla., 1975), cert. den., 333 So.2d 464 (Fla. 1976). And see, Bateman v. City of Winter Park, 37 So.2d 362 (Fla. 1948); Tamiami Trail Tours, Inc. v. City of Orlando, 120 So.2d 170 (Fla. 1960) and Finlayson v. Conner,167 So.2d 569 (Fla. 1964).
The issue, then, is whether the permit fee is an occupational license fee or an occupational permit fee, the payment of which a fair association incorporated under Ch. 616, F.S., and securing the state permit required therein is exempted from under the provisions of s. 616.12(2), F.S. Chapter 616 does not define the terms "occupational license fee" or "occupational permit fee." (e.s.) In such instance, the rule of interpretation is that where a statute uses words and terms, without specifically defining their meaning, such words and terms will be considered to have their plain and ordinary meaning. Milazzo v. State, 377 So.2d 1161
(Fla. 1979); State v. Stewart, 374 So.2d 1381 (Fla. 1979); Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950). The term "occupational" is generally defined as "[o]f or pertaining to an occupation, trade or work." Black's Law Dictionary 973 (5th ed. 1979); and see, Webster's Third New International Dictionary 1560 (unabridged ed. 1981). Section 18.01, City Code of Orlando, relates to the conduct of "a circus, sideshow, bazaar, revival meeting or any other outdoor show or assemblage for any purpose whatsoever, in/under any tent or other temporary structure. . . ." (e.s.) See, 3A C.J.S. Any, p. 903 defining the term "any" in its ordinary sense as "a word which is broad and general, and comprehensive, and is broadly inclusive, and all embracing . . . it negatives the idea of exclusion, and it is applied indifferently." Cf., AGO 83-90. While the Orlando City Ordinance specifically mentions "a circus, sideshow, bazaar [or] revival meeting," the ordinance goes on to provide that it applies to any other show or assemblage for any purpose in or under a temporary structure. Thus, the ordinance is comprehensive in its terms and applies to all outdoor assemblages in or under temporary structures and is not limited to any particular occupation, trade, or work or group thereof. A permit fee imposed by ordinance which does not pertain to any particular occupation, trade or work, but is assessed to cover the costs of administrative expenses and inspections in regulating temporary structures in which an outdoor show or assemblage will take place would not appear to be an occupational license fee or occupational permit fee as contemplated by s. 616.12(2), F.S.
Section 2(b), Art. VIII, State Const., provides in pertinent part that "[m]unicipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law." (e.s.) Pursuant to s. 166.201, F.S., "[a] municipality may raise, by taxation and licenses authorized by the constitution or general law . . . amounts of money which are necessary for the conduct of municipal government. . . ." (e.s.) This office has recently concluded that the term "licenses" as used in s. 166.201, supra, includes in its generality regulatory taxes levied under the police power and regulatory licenses or fees. See, AGO 84-98 which concluded, inter alia, that a municipality may not impose either a regulatory license or a revenue license in the absence of authorization by general law. Cf., AGO's 74-21; 76-30. The foregoing conclusion would also appear to be applicable to municipal regulatory permits. See, 53 C.J.S. Licenses s. 1. (terms "license" and "permit" are often used synonymously). See also, Black's Law Dictionary 1026 (5th ed. 1979) defining "[p]ermit" as "any document which grants a person the right to do something. A license or grant of authority to do a thing . . . A written license or warrant, issued by a person in authority, empowering the grantee to do some act not forbidden by law, but not allowable without such authority"; and Webster's Third New International Dictionary 1683 (unabridged ed. 1981). Accordingly, a municipality must be authorized by general law or the Constitution before it may impose a regulatory license or permit to raise amounts of money which are necessary for the conduct of municipal government. See, e.g., s. 166.222, F.S., supra, authorizing municipalities to impose reasonable inspection fees to defer the costs of inspection and enforcement of their building codes.
You have directed my attention to AGO 65-88 which addressed the question of whether a fair association, incorporated under the provisions of Ch. 616, F.S., which operates under permit granted by the Commissioner of Agriculture was subject to payment of a license tax or fee provided by ordinance of a municipality. Under the facts of that inquiry, the City of Key West had enacted Ordinance No. 840, which levied a carnival and circus license fee of $500 for the first day of operation and $50 for each succeeding day of operation. Unlike Ch. 18, City Code of Orlando, Ordinance No. 840 explicitly pertained to a schedule of occupational license fees, which were imposed upon the occupation of conducting carnivals and circuses. Moreover, AGO 65-88 discussed s. 616.12, F.S., 1965. Section 616.12 has been amended since the rendition of that opinion. Subsection (2) of s. 616.12, the provision in question in the instant inquiry was added by s. 11, Ch. 83-239, Laws of Florida. Therefore, to the extent of any conflict with the instant opinion, AGO 65-88 should be considered as modified.
Accordingly, unless and until legislatively clarified or judicially determined otherwise, I am of the view that a fair association, incorporated under the provisions of Ch. 616, F.S., and which operates under a permit granted by the Department of Agriculture and Consumer Services is subject to payment of a nonoccupational, regulatory permit fee imposed by a municipal ordinance provided the imposition of such permit fee or license is authorized by the Constitution or general law.
Sincerely,
Jim Smith Attorney General
Prepared by:
John Rosner Assistant Attorney General