**STATE of Alaska, DEPARTMENT OF REVENUE, Appellant,**

v.

**The PARSONS CORPORATION and The Ralph M. Parsons Company, Appellees.**

**No. S–4137.**

Supreme Court of Alaska.

Dec. 31, 1992.

Marilyn May, Teresa Williams, David T. Leblond, Asst. Attys. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for appellant.

Lance B. Gordon, Patrick G. Woosley, Pasadena, CA, David G. Shaftel, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The Alaska Department of Revenue ("DOR") appeals the superior court's reversal of DOR's July 5, 1988, administrative decision affirming the audit division's assessment of corporate income taxes against the Parsons Corporation and the Ralph M. Parsons Company ("Parsons") for tax years 1977 through 1981. At issue is the proper allocation of revenue derived from contracts to construct oil and gas facilities at Prudhoe Bay under the three-factor formula of the Multistate Tax Compact, AS 43.19.010–43.19.050.

In computing the "sales" factor, Parsons excluded from the numerator revenues which it attributed to services performed outside the State of Alaska. DOR determined that the revenues were derived not from services alone but from transactions involving the sale of tangible personal property delivered inside the State of Alaska, and therefore included the revenues in the Alaska numerator of the sales factor. After a formal hearing, DOR affirmed the audit division's assessment, finding that Parsons' contractual activities on the North Slope constituted a sale of tangible personal property. The trial court reversed DOR's decision. We reverse the trial court and affirm DOR's administrative decision.

## I. FACTS

Parsons is a multinational corporation providing design, engineering, procurement, and construction services to private and governmental clients throughout the world. In the 1970's and early 1980's, Parsons was engaged in extensive, multiyear projects involving the oil and gas production facilities at Prudhoe Bay.

Beginning in 1971, Parsons contracted with Atlantic Richfield Company and ARCO Oil and Gas Company (collectively "ARCO") to design and construct oil and gas field facilities for Prudhoe Bay. Parsons and ARCO renegotiated their contractual relationship a number of times, but they stipulated that only three of these contracts were at issue for the tax years in question: contract 4834, dated January 28, 1971; contract 5600, dated October 11,

1978; and contract 6000, dated March 24, 1979. The contracts are cost-plus-fixed-fee contracts utilizing a zero balance bank account mechanism.

Contract 4834 states that Parsons agrees to manufacture, fabricate, deliver, and sell at Prudhoe Bay modules and other equipment described in the contract documents. Parsons is to perform all work under the contract as an independent contractor and not as an agent. Parsons is to be paid for the sale of modules under the contract. Title to property, including modules, materials, and equipment for the project acquired or manufactured by Parsons vests in Parsons. Title only passes to ARCO when the modules and other equipment are completed, delivered, and accepted at Prudhoe Bay. Parsons warrants that the modules and equipment will be free of defects in material and workmanship.

Contract 5600, in revised form, incorporates the same job instructions as contract 4834. Parsons is to construct North Slope oil field facilities in a series of units called modules. Title to property acquired or manufactured by Parsons will initially vest in Parsons until title passes upon delivery.

Contract 6000 is in a form similar to contract 5600. It is for the construction and delivery of oil field modules. Key elements of the design concepts under the contract include constructing the facilities in modules in the Lower 48 to minimize Prudhoe Bay construction; limiting the size of the modules to stay within the limits of current crawler/transporter technology; fabricating the modules on the west coast for direct access to ocean-going barges; scheduling the construction in annual increments to meet sealift dates; offloading the modules onto gravel causeways at Prudhoe Bay; supporting them on pilings anchored in the permafrost; and interconnecting the modules to minimize personnel exposure to the Arctic environment.

Parsons performed under these contracts in several states outside of Alaska. Parsons provided engineering, design, and agency procurement services from its home office in California. Parsons designed the facilities in modular sections which were partially assembled in Washington and Oregon, where Parsons provided construction management services. The modules were then barged to Prudhoe Bay where they were hauled into place by huge tractors. Some of the modules fabricated in Tacoma, Washington, were up to eight stories high.

## II. PROCEEDINGS

In filing Alaska corporation income tax returns, Parsons used the three-factor apportionment method to determine its Alaska taxable income. In general, Parsons attributed revenues from the ARCO contracts to work performed outside of Alaska and therefore excluded them from its Alaska sales numerator. DOR's audit division, however, attributed these revenues to the Alaska numerator, and accordingly adjusted Parsons' Alaska sales numerator and total tax liability.

Parsons appealed the audit division's assessment to a formal hearing after the audit division issued an informal conference decision affirming the audit assessment for the tax years 1977, 1978, and 1979. The formal hearing affirmed the assessment, and Parsons paid the additional tax and interest due of $73,405.90 on October 28, 1983. Parsons appealed this decision to the superior court but later stipulated with DOR to remand the appeal, and the case was dismissed without prejudice.

On June 11, 1984, the audit division issued another notice of assessment to Parsons for the tax years 1980 and 1981. The audit adjustments resulted in additional tax liability for Parsons of $309,682 for 1980, and $203,812 for 1981. Parsons appealed these assessments. The 1980 and 1981 issues were consolidated by agreement with the tax years 1977, 1978, and 1979. The audit division's assessments were affirmed at both an informal conference and subsequent formal hearing. DOR issued Decision No. 88–67 on July 5, 1988.

Parsons appealed to the superior court on August 4, 1988. On July 3, 1990, the superior court issued a memorandum opinion and decision reversing DOR's Decision No. 88–67. Judge Madsen held that Parsons sold services to ARCO in contracts 5600 and 6000 and rendered services through a separate income producing activity under contract 4834.

The superior court awarded Parsons attorney's fees of $25,000 on September 20, 1990. DOR appealed the superior court's memorandum opinion and decision on July 30, 1990, and later amended its appeal to include an appeal of the superior court's order awarding attorney's fees.

## III. DISCUSSION

### A. Standard of Review

■ We summarized our approach toward reviewing administrative decisions in *Handley v. State*, 838 P.2d 1231, 1233 (Alaska 1992):

> We will independently review the merits of an administrative determination. No deference is given to the superior court's decision when that court acts as an intermediate court of appeal.

> We have recognized four principal standards of review of administrative decisions. The 'substantial evidence' test is used for questions of fact. The 'reasonable basis' test is used for questions of law involving agency expertise. The 'substitution of judgment' test is used for questions of law where no expertise is involved. The 'reasonable and not arbitrary' test is used for review of administrative regulations. (citation omitted).

In the present case, the reasonable basis test applies. The facts are complex. Interpreting the Multistate Tax Compact ("Compact") depends upon the " 'particularized experience and knowledge of the administrative personnel'." *Gulf Oil Corp. v.*

*State, Dep't of Revenue*, 755 P.2d 372, 378 n. 19 (Alaska 1988) (quoting *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971)). We are satisfied that the reasonable basis test is appropriate because this case "requires resolution of policy questions which lie within the agency's area of expertise and are inseparable from the facts underlying the agency's decision." *Earth Resources v. State, Dep't of Revenue*, 665 P.2d 960, 964 (Alaska 1983). Therefore, we will not reverse DOR's decision if there is a reasonable basis to support it.

### B. The contracts between Parsons and ARCO were for the sale of tangible personal property delivered to a purchaser in Alaska for purposes of the Compact, AS 43.19.010, Art. IV.

■ One of the purposes of the Compact is to avoid duplicative taxation of business entities which do business in more than one state or nation. AS 43.19.010, Art. I. The Compact sets out a three factor formula to measure the business income attributable to each state. AS 43.19.010, Art. IV(9). The three factors are property, payroll, and sales. The sales factor, the relevant factor in this case, is the ratio of the taxpayer's sales made in the taxing state during the tax period and the total sales of the taxpayer everywhere during the same period. AS 43.19.010, Art. IV(15). The property and payroll factors are similarly determined. The business's taxable income that is apportioned to the taxing state is then determined by multiplying the business income by a fraction derived from these three factors.[1]

Using the Uniform Division of Income for Tax Purposes Act approach, the Compact divides sales revenues into two categories and applies different sourcing rules to each: (1) revenue from sales of tangible personal property is sourced to the place of delivery and (2) revenue from sales of services is sourced to the place of perfor-

---

1. The numerator of the fraction is the property factor plus the payroll factor plus the sales factor; the denominator is three. AS 43.19.010, Art. IV(9).

mance.[2] The income tax results in this case depend upon the classification of Parsons' business activity. If Parsons acted as a manufacturer and seller of oil field modules its revenues were for the "sale of tangible personal property." If Parsons acted as a contractor who procured materials as a purchasing agent and was paid for skills and services provided, its revenues were from sales "other than sales of tangible personal property." AS 43.19.010, Art. IV.

▮▮ In Decision No. 88–67, DOR determined that Parsons' "engineering, construction management, and procurement services were performed in order to sell tangible personal property to a customer in Alaska." It therefore affirmed the audit division's assessments. In so doing, DOR properly rejected Parsons' arguments that Parsons was only acting as ARCO's agent[3], and that Parsons' California home office engineering services constituted a separate income producing activity.

2. AS 43.19.010, Art. IV. Division of Income.
....
16. Sales of tangible personal property are in this state if:
(a) the property is delivered or shipped to a purchaser ... within this state....
....
17. Sales, other than sales of tangible personal property, are in this state if:
(a) the income-producing activity is performed in this state; or
(b) the income-producing activity is performed both in and outside this state and a greater proportion of the income-producing activity is performed in this state than in any other state, based on costs of performance.

3. In determining that Parson's was not ARCO's agent, DOR carefully examined the facts of the present case, and compared these to relevant authority. After reviewing the record, and using our independent judgment, we agree with DOR's decision on this issue. As DOR notes,
The Taxpayer retain[ed] legal title to the procured materials and equipment until it was delivered to Prudhoe Bay. It was responsible for insuring its own employees and certain other items, and was liable for any personal injury, death or damage to property arising out of the Taxpayer's work. The Taxpayer warranted its work. It was responsible for hiring employees and making payments for purchases. It obtained workers' compensa-

The relevant statute and regulations support DOR's decision. The Compact considers sales of tangible personal property to be in Alaska if "the property is delivered or shipped to a purchaser ... within this state regardless of the f.o.b. point or other conditions of the sale." AS 43.19.010, Art. IV, (16)(a). DOR has promulgated rules pursuant to the Compact to help determine "sales" in various situations. Thus, for example, in the case of "cost-plus-fixed-fee contracts," such as the contracts in the present case, " 'sales' includes the entire reimbursed cost, plus the fee." 15 AAC 19.251(a)(2).

For the sales factor, DOR properly attributed Parsons' revenues to sales of tangible personal property made in Alaska. Regardless of the f.o.b. point and other conditions of the contracts, modules were shipped to a purchaser in Alaska. AS 43.-19.010, Art. IV, (16)(a). Because the recipient was located in Alaska, the modules are considered to be "delivered" here, even

tion insurance, employers' liability insurance, comprehensive bodily injury, personal injury and property damage liability insurance, and was obligated to require its subcontractors to carry these same type[s] of insurance coverages. It also was [ ] responsible for all taxes.
....
[A]ll of the contracts state that the Taxpayer was an independent contractor. Contract 4834 additionally specifies that the Taxpayer is not an agent or employee of ARCO. As the Audit Division points out, at no [time] in this appeal has any evidence been presented by ARCO or on its behalf that it intended the Taxpayer to serve as its agent. Rather, the contract provisions state the contrary....
....
[Finally,] [t]he purchase order forms do not convey an agency relationship. The form is clearly a form of the Taxpayer, listing the Taxpayer's name, its logo and addresses at the top of the form. Additionally, throughout the form, reference is made to the Taxpayer. The form states that the item is to be shipped to the Taxpayer, but does list the address as "c/o Atlantic Richfield Company." The Taxpayer has not stated, nor is it likely to occur, that if a non-reimbursable item is purchased using the purchase order forms that a vendor could collect against ARCO. [sic]
(Citations omitted). Given these facts, it is easy for us to conclude that Parsons should not be considered ARCO's agent for Alaska income tax purposes.

though they were ordered from outside the state. *See* 15 AAC 19.281(b). Furthermore, the sales properly included the entire reimbursed cost, plus the fee. 15 AAC 19.251(a)(2).

 We reject Parsons' argument that its revenues were derived from "professional services." The relevant sales factor regulation, when referring to taxpayers engaged in providing services, lists such activities as "the operation of an advertising agency, or the performance of equipment service contracts, [or] research and development contracts." 15 AAC 19.251(a)(3). Parsons' activities do not fit into either the specific activities listed or the general class of activities the list is meant to illuminate.

The regulation for sales other than sales of tangible personal property lists such business activities as rendering personal services; selling, renting, or leasing real property; renting or leasing tangible personal property; and selling intangible personal property. 15 AAC 19.301(b)(1–4). Parsons did not do any of these things under the ARCO contracts.

In Decision 88–67, DOR concluded,

It is clear that the Taxpayer's contracts here required the Taxpayer to perform services *and* procure the materials and equipment necessary to produce the modules. In fact, in the later contracts, the procurement of materials and equipment for ARCO·was so integrated into the contracts that no separate phase of the contract exists outlining the sale and transfer of the property. The modules that incorporated the procured property were more than just "incidental" to the services rendered. It is clear that the contracts required more than just rendering service.

We agree. We are satisfied that the record contains a reasonable basis to support DOR's Decision 88–67.[4]

It is a fair result to attribute Parsons' sales to Alaska. The North Slope contracts are important to Parsons. Parsons has described itself as the "unrivalled leader in the modularization of production and process facilities for use" on the North Slope. Thus, even though most of Parsons' activities are conducted outside of Alaska, it is perfectly appropriate to attribute all of its revenues to Alaska, for sales factor purposes. *See Sjong v. State, Dep't of Revenue,* 622 P.2d 967 (Alaska 1981). Failure to attribute sales to the state in which they are made "would greatly underrepresent the extent of the taxpayer's activities within the state." *Id.* at 978.

## IV. CONCLUSION

We REVERSE the superior court's memorandum opinion and decision and AFFIRM DOR's Decision No. 88–67. We also VACATE the superior court's attorney's fees award.

---

**4.** The cases Parsons relies on to argue that there was no "sale" here are distinguishable. In *Mark IV Metal Products,* CCH Cal Rptr. ¶ 400–268 (Cal.St.Bd.Eq.1982), the owner sent unfinished metal to the contractor, who fabricated it into seat parts which the contractor shipped back to the owner, who then incorporated them into metal seats for sale to the owner's customers. In *Lone Star Steel v. Dolan,* 668 P.2d 916 (Colo. 1983), the issue was whether pipe was sold in state or out of state when it was first delivered by the manufacturer to an in state business which applied coating and wrapping, before the pipe was shipped to the out of state purchaser. Parsons' "services" were not analogous to the services of coating and wrapping the pipe in *Lone Star,* or the fabricating of metal seat parts in *Mark IV.* Parsons manufactured the modules, as ARCO's contractor, and delivered them to ARCO in Alaska. Therefore, the gross receipts Parsons derived from that delivery are taxable in Alaska. Alaska Statute 43.19.010 Art. IV, subdivision 16(a) is designed to cover transactions, such as the one in the present case, which are "not traditionally viewed as sales." *See Coulter Electronics v. Department of Revenue,* 365 So.2d 806, 808 (Fla.App.1978). The relevant inquiry, which we engage in above, is whether tangible personal property is delivered in this state.